## McCARTNEY vs. KING et al.

25    681
129    409
25    681
130    211

1. If the plaintiff in execution purchases at the sheriff's sale, after having indemnified the sheriff, and with notice of a defect in the title, he cannot come into equity, after paying a recovery had against him by the true owner, to be relieved of his purchase.

APPEAL from the Chancery Court of Talladega.
Heard before the Hon. E. D. TOWNES.

THE original bill in this case was filed by the appellant against Matilda M. King, Solomon Spence, David A. Calhoun and John Bradley, to enforce a vendor's lien for the unpaid purchase money of land. It alleged, that the land was sold, in 1836, by one Jesse Dunn to said Bradley, for about $5,000, and a conveyance in fee simple executed by the vendor ; that Bradley gave his two promissory notes, for $1,000 each, to secure the payment of a part of the purchase money, which notes Dunn afterwards, for a valuable consideration, assigned to the complainant ; that Bradley subsequently sold a part of the land to one William King, and took his two notes, for $1,000 each, for the payment of the purchase money ; that Bradley afterwards assigned King's said notes to complainant, in exchange for the two notes which the latter held on him, and took up his own notes ; that complainant obtained judgments at law on King's two notes, " but cannot find assets to satisfy them ;" that King died in 1840, and Bradley afterwards conveyed the land to said Matilda King, who was the widow and executrix of said William King, and to her son John C. Calhoun, who was executor of said King ; that said defendants Matilda and John C. took the conveyance with full knowledge that the land was not paid for ; that said John C. Calhoun afterwards died, intestate, leaving his brother David A. Calhoun his only heir-at-law ; that said Matilda was afterwards removed from the executorship of said King's estate, and the defendant Solomon Spence was appointed his sole administrator ; that Spence was also appointed administrator of said John C. Calhoun's estate, and had reported both estates insolvent.

44

After Mrs. King had put in an answer to the bill, there seems to have been an order of reference to the master, to ascertain and report the amount due on complainant's said judgments ; at least, the master's report, which is next copied in the record, purports to have been made in pursuance of an order of reference, · but the order itself nowhere appears.— This report ascertains that one of the judgments had been satisfied in full, and there was a partial satisfaction entered on the other, leaving a balance due of $427. Several supplemental bills were afterwards filed, the object of which was to have these credits on the judgments set aside, and the complainant remitted to his lien on the land for their full amount. The facts presented by these several bills, which are sustained by the proof, may be thus briefly stated :

Executions were issued on complainant's judgments, against said Spence as the administrator of King, and were levied on several slaves. These slaves were claimed by Spence as administrator of said John C. Calhoun, and also by said David A. Calhoun ; but the plaintiff indemnified the coroner to sell, and became the purchaser himself for the sum of $2,483, which constituted the said credits on the judgments. At the time of the sale, Spence gave public notice that he claimed the slaves as the property of his intestate John C. Calhoun, and said David A. Calhoun also gave notice that he claimed them as his own, and would assert his right to them. Subsequently, Spence, as administrator of said John C. Calhoun, brought an action at law against complainant for the said slaves, and recovered a judgment against him for their full value ; and said David A. Calhoun filed his bill in chancery against complainant, and obtained a decree against him for about $2,800 for his interest in the said slaves. Complainant, having paid off this judgment and decree, now seeks to be relieved of his purchase, and to be remitted to his lien on the land for the full amount of his judgments.

The chancellor refused the relief prayed by the supplemental bills, holding that, as the complainant purchased at the coroner's sale with full knowledge of the defect in the title to the slaves, he could not be relieved of his purchase in equity ; and his decree is now assigned for error.

McCartney v. King et al.

MORGAN & MARTIN, for appellant :

1. There is an undisputed lien for the purchase money, to the extent of the sum due on the judgments described in favor of McCartney v. Spence, administrator of King. The question is, what sum is due? and this question is not to be determined alone by reference to the fact whether the judgments are satisfied, or even extinguished, in contemplation of law ; for, if such is the case, and if in equity the debt will not be considered as extinguished, it will exist in its full force, and attended with its original incidents and liens.

2. There was no satisfaction of record of these judgments, so as to conclude a court of chancery from looking into the fact whether there was a satisfaction of the judgments.— Conceding to a sheriff's return full force, it is still only *prima facie* evidence, as to third persons, of the facts stated in it.—Gov., use &c., v. Gibson, 14 Ala.; Nolin v. Hamner, 22 Ala. 580; Gifford v. Woodgate, 11 East 297 ; Cator v. Stokes, 1 M. & S. 600 ; Phil. on Ev., vol. 5, p. 391 ; 8 B. Monroe 302.

3. There is no satisfaction of record in this case : there is a receipt on the record of the Circuit Court, purporting to be signed by the plaintiff in execution, for the damages on one of the judgments, and for a portion of the damages on another ; but this receipt does not prove itself, and if it was proven to be genuine, it does not, by being put on the record, *ipso facto* create a satisfaction. A satisfaction of record, and possessing the qualities of record evidence, is something more than a mere receipt, or return of a sheriff : it must be a matter which passes *sub judice* to have the effect mentioned.

4. Conceding, for the sake of the argument, that a court of law could not be controlled by a court of equity, so far as to authorize the latter to set aside entries made on the records of the former ; still, cannot a court of equity examine into the effect of a receipt, on a judgment at law, and allow it to be explained, as it could any private receipt, and declare the debt to exist in the form of an equitable right or demand, although it could not be again restored to vitality and force as a judgment at law ? and if declared to exist in this form, to proceed, and enforce the liens attendant upon it?—McGehee v. Ellis & Browning, 4 Litt. 244. And it makes no differ-

ence that the purchaser of the property had notice of the defect in the title.—McLaughlin's Administrator v. Daniel, 8 Dana 182.

5. Equity has jurisdiction to decree the re-payment of money to one who has paid it, in good faith, under a mistake, or for the benefit of a person whose duty it was to pay it, on the principle of substitution, and will place the person paying the money in the place of the creditor who received it, and enforce the obligation of the debtor to pay the debt in favor of such person.—McGehee v. Ellis, 4 Litt. 244. And a court of equity, where the demand is of an equitable nature, will. enforce it, in favor of a person who by his act has extinguished a debt against another, if the latter by any act adopts or ratifies the payment.—See Poe, sheriff, v. Dorrah, 20 Ala. 291 ; Bray v. Howard, 7 B. Mon. 467. In this case, King's administrator adopts the payment endorsed on the execution by McCartney, and insists that it is a discharge ; so that, if King's administrator did not, in fact, pay the debt, the person who did pay it, is entitled to recourse against him. And if the plaintiff, by mistake, or upon an insufficient consideration, entered a discharge upon the debt, when the defendant was not entitled to it, the debt still remains.—Pearson & Fantt v. Thomason, 15 Ala. 700.

6. In this case, the executor of King, who preceded Spence in the administration, had returned under oath to the Orphans' Court that the slaves levied on by the sheriff were the property of King's estate, and had also made a fraudulent purchase of them, at his own sale as King's property, and returned his purchase to the Orphans' Court. Spence took no steps to correct the action of his predecessor, and left all of King's creditors under the false impression that the property was still belonging to the estate, if Calhoun's purchase was invalid, of which there could be but little doubt. At the sale of the property, Spence made no claim to the property, as belonging to Calhoun's estate, of which he was also the administrator, but suffered it to be sold without objection. His conduct was calculated to mislead the purchaser at that sale, and he is estopped, in equity, from claiming either the property or its proceeds.—Stone v. Britton, 22 Ala. 543 ; 19 Ala. Rep. 430.

7. Spence, as administrator of John C. Calhoun, made an election, after the sheriff's sale, to consider the slaves as the property of the estate of Calhoun, instead of King ; and on this election, he predicated an action at law, which resulted in the recovery of the whole value of the negroes by him.— This election was in direct opposition to what a court of equity would have required him to have done, at the instance of any person interested in the estate ; and by this means, he took the value of the negroes out of the hands of McCartney, who was the indemnitor of the coroner, McLane. Can Spence, in equity, claim the credit on the judgment, and the value of the slaves ?—See McLane v. Spence, 11 Ala. 172 ; Same v. Same, 6 Ala. 898. Spence can claim neither the credit on the execution, nor the value of the slaves ; because the slaves never belonged to him as administrator of King or Calhoun.

8. The maxim *caveat emptor* is, in effect, that the sale was made under such circumstances that there is no warranty.— The purchaser takes the risk of defects of title, so far as the vendor is concerned. It operates as an estoppel upon the purchaser, to attempt to avoid the contract of purchase for defects of title ; but, like all other estoppels, there must be mutuality, and while the vendee is estopped to set up a defect of title at the time of sale, the vendor is also estopped from denying the validity of the sale. He simply says, " I am not bound to defend the title as against third persons." He cannot say so as to a title he held at the time of the sale, and afterwards attempts to enforce: he is bound not to set up such a title.

9. This maxim only applies as between the parties to the contract, and to those in privity with them. A defendant in execution is not a vendor nor vendee of property sold under execution against him. He is passive: he has done and suffered nothing, which could create an estoppel for or against him.

10. A person acting fraudulently cannot shield himself behind this or any other maxim of the law.

11. The maxim " *caveat emptor*" does not apply to sales on a warranty. This is a sale on a warranty: where the sheriff is indemnified to make a sale, he is a warrantor of the title (Hodge v. Thompson, 9 Ala. 131) ; and the indemnitor stands

in the shoes of the sheriff.  If a stranger purchases at such a sale, he must have a good title.  If the plaintiff in execution should purchase, why must he not have a good title ?  He was compelled to indemnify the coroner to make the sale, or let it pass entirely.  The law imposes no penalty on him for this act, but makes it a duty on the part of a plaintiff to save the officer from trouble ; and it is always the defendant's fault that a plaintiff is forced to such measures : if he would pay his debt, or even make a fair disclosure of his property, indemnities would not be needed ; and so it was in this case. What disadvantage, or loss, or contract, or understanding is it, to which a defendant in execution is a party, and which would enable him to say to the purchaser, whether plaintiff or a stranger, " You bought with notice," or " There was no warranty in this case?"  No one ever supposed that he would warrant the property.

12.  The very fact that there was a warranty at this sale is the reason why a court of equity will interfere at the instance of the plaintiff in execution, or even a stranger, and give relief as against the defendant in execution.—McGehee v. Ellis, 4 Litt. 244 ; Jones v. Henry, 3 *ib*. 427.

13.  The effect of the declaration of insolvency of the two estates of King and Calhoun, is not to give Spence, as the administrator, any rights superior to such as he would have in the absence of such a declaration.  It is not shown that there are any creditors of either estate besides McCartney. This is not a question between creditors, but between a creditor and the administrator or heirs of the estate.  McCartney is the creditor, and the defendants claim the estate.  Such a declaration is by no means conclusive as to the insolvency of the estate.—McGuire v. Shelby, 20 Ala. 456.

14.  It is the policy of the law to uphold and sanction judicial sales, and to give purchasers confidence in them.  If such sales are to be mere traps for the unwary, they will become a curse to the parties interested in them.  A sheriff, who fails to disclose at the sale a known defect of title, is liable, even to the plaintiff in execution, if he is a purchaser, for the whole value of his bid.—Bank U. S. v. Carroll, 4 B. Monroe 49 ; Commonwealth v. Dickinson, 5 *ib*. 508.

WHITE & PARSONS, *contra:*

There is no ground stated in the bill for the jurisdiction of this court : the remedy, if any, is to be had by application to the court whence the execution issued, to set aside the sales, and this remedy must be sought promptly.—Lamkin v. Crawford, 8 Ala. 159 ; Nolin v. Hamner, 22 *ib.* 581 ; 22 *ib.* 365 ; McGehee v. Ellis & Browning, 4 Litt. 247; Banks v. Spain, Litt. S. C. 451.

Complainant shows by his bill, that he was cognizant of all the facts, and after knowing the facts he forced a sale by indemnifying the coroner to sell. If there was a mistake, it was a mistake of law, and will not avail him. If a man has knowledge of the facts, and acts presumptuously upon his knowledge of the law, though mistakenly, if not drawn into the mistake fraudulently, that is no ground for relief in equity. Friedly v. Sheetz, 9 S. & R. 161 ; Bank of United States v. Daniel, 12 Peters 32, 55-6 ; Hunt v. Rousmaniere, 1 *ib.* 15; 1 Story's Eq., §§ 113, 116-20 ; Haden v. Ware, 15 Ala. 149.

Here there was no fraud, no imposition, no undue influence, or surprise ; but a deliberate, settled, wilful determination to take the risk of his own conduct by complainant. It is, to say the least, a naked mistake of law, without admixture of any of the circumstances which justify the interposition of a court of equity.—See 1 Story's Eq., § 110 ; and for exceptions to the rule, see § 120, *et seq.*

This is not the ordinary case of a party resisting the payment of purchase money bid by him at sheriff's sales, upon the ground that he has been deceived, or that he acquired no title, and that there was no consideration ; but complainant satisfies the execution, receives the property and retains it, and yet asks that the price which has been paid for it shall be paid back, because the officer who sold it has been found liable for it in one action, and that it has been charged with the value of D. A. Calhoun's interest in it, of both of which he had distinct and emphatic notice.

The sale was upon sufficient consideration ; the uncertainty as to the right would enable the complainant to buy it in very low, and the transfer of the possession was enough to sustain the promise, and the more so to prevent a rescission of the contract after it had been executed. Adequacy of consideration

will not be inquired into in the absence of fraud.—Parsons on Cont. 361-2 ; Livingston v. Byrne, 11 John. 566 mar.; Perry v. Williams, 4 Dudley 44.

In all of the cases in which relief has been granted in this court, similar to the case made by complainant, it will be found that there was fraud or some act of the defendant in execution misleading or deceiving the purchaser, or that cases in which there was no such element of decision are based upon those in which it did exist.—See Lansing v. Quackenbush, 5 Cow. 38; McLaughlin v. Daniel, 8 Dana 182; McGehee v. Ellis, 4 Litt. 244; 3 Blackf. 293; 3 Litt. 428.

If McCartney has any remedy, it is as a purchaser and against the defendant in execution, and not as an original creditor whose lien for the purchase money of the land is yet retained, or an execution creditor whose debt has not been satisfied ; but his present demand is a new debt from defendant in execution to him, arising out of and based upon the fact of his having paid off and discharged the debt of defendant in execution by the purchase of property which did not belong to defendant, and for which he has had to account to a third person.—4 Litt. 244; 8 Dana 184. By the satisfaction of the executions the endorser was discharged, and he being discharged, the lien upon the land is gone.—Click v. Bass, 5 Ala. 363.

The sheriff's return of satisfaction is conclusive until set aside in the Circuit Court.—Clarke v. Gary, 11 Ala.; C. & H. Notes to Phil. Ev., vol. 4, pp. 798-9 ; 3 Litt. 129-30.

But it is insisted that the prevailing doctrine, and the correct one, is that the sheriff only sells the interest of the defendant in execution in the property sold by him under execution, and that all persons who buy at such sales buy at their own risk. " Let the purchaser beware," is the rule applicable to such sales.—Worthington v. McRoberts, 9 Ala. 297; Perkins v. Winter, 7 ib. 867 ; Thayer v. Sheriff, 2 Bay 170 (cited 7 Ala. 870) ; Friedly v. Scheetz, 9 S. & R. 156 ; The Monte Allegro, 9 Wheat. 616 ; 4 Gill & J. 491-2 ; 19 Ver. 325-6; 18 Verm. 390; 10 Miss. 157; 2 Yerg. 394 ; 9 Ala. 300; 11 Wheat. 307; 4 Am. Com. Law Jour. 137.

A purchaser cannot object to a sheriff's sale a defect of title of which he had notice.—Friedly v. Scheetz, 9 S. & R. 161.

When the plaintiff in execution indemnifies the sheriff in levying, and purchases the property without paying the money, at a sufficient sum to cover his debt, it operates as a satisfaction of the execution, though in fact the property did not belong to the defendant, and the plaintiff was forced again to pay for it upon his bond of indemnity.—4 Dudley 44; 2 Bailey 418; 5 Strob. 148; 4 Strob. Eq. 186; 9 Yerger 100.

When plaintiff in execution bids off property of defendant at sheriff's sale, the bid itself is payment.—Smith v. Godbold, 4 Strob. Eq. 186.

Equity follows the law, and will not set aside a plain and settled principle of law upon the mere hardship of the case.

Plaintiff in error cannot recover, either as purchaser or as plaintiff in execution, of the defendant in execution. There was nothing done by defendant in execution to induce him to buy ; on the contrary, Spence, the defendant in execution, forbid the sale, and notified McCartney that the property did not belong to the estate of King. There is no privity of contract between McCartney as creditor, or as purchaser, and the defendant in execution, in the purchase of this property, and without this no indebtedness on the part of defendant in execution to complainant could originate.—Atkinson v. Farmer, 2 Murph. (N. C.) Rep. ; Abel v. Sutton, 1 Esp. 112 ; Williams v. Willington, 1 H. Bla. 82-3 ; Corbett v. Poilnetz & Wife, Durn. & East, 1 Term R. 17 to 21 mar.

Moral obligation not sufficient to sustain an action, either at law or in equity.—Parsons on Cont. 358, 361.

GOLDTHWAITE, J.—The object of the bill is to enforce the vendor's lien for the purchase money of land. The land was sold by John Bradley to William King, and part of the notes given for the purchase money assigned to the appellant, who, before filing his bill, obtained judgments at law upon them. From the pleading and evidence in the cause it appears, that the appellant sued out executions against Spence, as the administrator of the vendee, King, and had them levied on a number of slaves as the property of King's estate. At the time the negroes were sold upon this levy by the coroner, Spence, who was the sheriff and administrator of Jno. C. Calhoun, as well as of King, gave notice that the title was in

Calhoun, and that he would sue for them as his representative. David A. Calhoun, also, at the same time claimed the slaves, and gave notice that he would assert his claim to them. The coroner, who was indemnified by the appellant, proceeded to sell, and they were bid off by the latter, who heard the notice given by Spence and Calhoun. The amount bid by the appellant being more than sufficient to pay one of the executions, he acknowledged satisfaction on the one, and entered a partial satisfaction as to the other. Spence then brought an action against him, and, as the representative of John C. Calhoun, recovered of him the value of the slaves, which he paid ; and David A. Calhoun, by a suit in chancery, compelled him to pay about $2,800, which was declared to be a lien in his favor on the slaves. The master reported an account, in which he has credited King's estate with the whole amount bid for the slaves by the appellant, and reported the balance due. These facts are charged in a supplemental bill, and it is asked, that the satisfaction on the one execution and the partial satisfaction on the other be set aside, and that the appellant be allowed to enforce his lien for the whole amount of his notes upon the land. This prayer is predicated upon the entire failure of the title of the slaves bought by him, as evidenced by the recoveries of Spence and David A. Calhoun.

Upon these facts, the main inquiry is, whether a plaintiff, who has bought property under execution sale, after indemnifying the sheriff, and with notice of the defect of title, can come into chancery, after the payment of a recovery against him by the true owner, and be relieved of his purchase.

The question as to the application of the doctrine of *caveat emptor* to sales made by the sheriff under execution, can scarcely be regarded as an open one in this court, since our decisions applying the rule to sales made by an administrator under the order of the Orphans' Court.—Perkins v. Winter, 7 Ala. 867; Worthington v. McRoberts, 9 *ib.* 297. There can be no difference, in principle, between such sales and one made by the sheriff in pursuance of the law, under execution. Both are judicial sales ; and if the doctrine obtains in the one case, the same reasons would require its application in the other. Indeed, in Lampkin v. Crawford, 8 Ala. 153, where the suit was brought by the marshal against a purchaser to

recover the amount bid by the latter upon the sale of property under execution, we held, that the fact that the defendant in execution had no title to the property was no defence to the purchaser.

We do not, however, understand that the application of the rule to the general class of cases to which have referred is denied; but it is insisted that it does not hold in cases where the sheriff is indemnified before making the sale. It may be true, that, in such a case, the sheriff becomes, in effect, the warrantor of the title, and his vendee may be entitled to the protection which the officer himself would have. But in the present case, the purchaser is the indemnitor; and if it be conceded that, if a stranger had bought the property, he might invoke the protection of the bond of indemnity, that is very different from holding that the indemnitor—the party who directs the trespass to be committed—may indemnify himself for the consequence of his act, by a resort to the defendant in execution. If that was allowed, we should be working in a circle: the purchaser would be compelled to pay the amount of his bid, but he could recover the amount, if his title failed, by a resort to the bond of indemnity; and the obligor in the bond could, in his turn, recover the amount of the defendant in execution, and thus the parties would be left precisely where they started.

The true doctrine, we think, is this: the purchaser, where the sheriff is not indemnified, buys at his own risk, and if it should turn out that the defendant in execution has no title to the property, he is notwithstanding liable for the amount of his bid. This is on the ground of contract. The officer sells, and the purchaser buys (not the thing itself, but) the real or supposed right which the defendant in execution has to it; and the purchase operates precisely the same as if he had bargained for and obtained a quit-claim. If the purchaser pays the money, the officer is bound to apply it to the discharge of the execution, for the reason that, as we have said, he receives it for a supposed right which the defendant in execution has to the thing sold. The same principle which compels the purchaser to pay in such a case binds the officer to apply the amount paid to the execution. If the sheriff is indemnified, we cannot see that the character of the sale is changed as to

the defendant in execution : he is in no way connected with the bond of indemnity ; and yet we are called upon to make that act produce a different result as to him.   If one was voluntarily to pay an execution against another, no recovery could be had against the debtor, without a ratification of the payment by him ; for the law does not allow a person to raise a debt against another without his consent ; and still less could a party who stipulated simply for a quit-claim title call upon the vendor as a warrantor.   Even if a payment volun- tarily made by a third person was ratified by the debtor, the original debt would be extinguished, and the person making the payment stand as a creditor at large against the debtor. He might, in such case, be entitled to sue and recover of him the money, but he could call for nothing by substitution.— Roundtree v. Weaver, 8 Ala. 314.

From what we have said, it follows, that the amount of the bid made by the appellant for the slaves sold was properly credited by him on his executions, and that neither the failure of the title, nor the action of the defendant in execution in insisting on the satisfaction, would authorize a court of chan- cery to set it aside.

It is urged, however, on the part of the appellant, that the peculiar situation of the parties to each other is shown by the record to be such as to require the satisfaction to be set aside, and the lien enforced for the whole amount of the purchase money.   In other words, that the record discloses that Spence was the administrator of John C. Calhoun, and also the ad- ministrator *de bonis non* of King ; that the former had, while he was the representative of King, purchased the slaves at his own sale, under such circumstances as to authorize a court of chancery to set it aside ; that Spence, representing both estates, had the power to elect whether he would confirm the voidable purchase made by Calhoun, thus rendering the title good in himself as the representative of that estate, or disaffirm it, and treat it as the property of King's estate ; and it is in- sisted, that in such a case a court of equity will control the election, so as to do justice to the creditors of each estate. The difficulty which meets the appellant in this aspect of the case, is, that whether the slaves be regarded as the property of the estate of either Calhoun or King is entirely immaterial,

so far as satisfaction to the amount of his bid is concerned. If the purchaser is to take the risk, and is bound to pay the money, although the property sold does not belong to the defendant in execution, then, if the creditor becomes the purchaser, his debt is reduced by the amount of his bid, and *pro tanto* he is no longer a creditor, and cannot as such claim the assistance of the court. If a stranger had bought the slaves, we have seen that he could not resist the payment of the purchase money; and that the plaintiff in execution was the purchaser cannot affect the principle, as he would be entitled to no peculiar rights on that account. There may have been circumstances in the conduct of the representative of King, which induced the appellant to believe that the slaves were the property of that estate; but these circumstances, as was held by this court in McLane v. Spence, 11 Ala. 172, were far from being conclusive. If, indeed, Spence, being the representative of the estate of Calhoun, had stood by in silence, and permitted the slaves to be sold under an execution against himself as the administrator of King, that, in our opinion, would have been an election on his part to treat the property as belonging to that estate; but this is not the case: Spence is found at the sale asserting the title of Calhoun,—electing to treat the property as belonging to that estate, and giving notice to the appellant, before he made the purchase, that he would so consider it; and if, after receiving this warning, he chose to buy, he is a purchaser with notice, and must abide the consequences against which he was warned. We know of no principle, under such circumstances, upon which he would be entitled to relief.

Decree affirmed, with costs of this court against the appellant.