# Goodbar, White & Co. *v.* Daniel.

*Bill in Equity by Purchaser at Sheriff's Sale, to set aside Fraudulent Conveyance.*

1. *Fraudulent conveyance; how avoided by purchaser at sheriff's sale.* A purchaser at sheriff's sale under execution, of lands which have been fraudulently conveyed by the judgment debtor, has a plain and adequate remedy at law by action of ejectment, and, therefore, can not come into equity to set aside the conveyance, not having acquired the possession; but, if the defendant in execution never had the legal title, having paid the purchase-money, and taken a conveyance of the title to his wife, the purchaser's only remedy is in equity.

2. *Purchase at sheriff's sale; equitable relief against*—A purchaser at sheriff's sale buys at his own risk, and acquires only the interest of the defendant in execution; the amount of his bid is a satisfaction, *pro tanto*, of his judgment, and a court of equity will not grant relief against it on the ground of mistake.

3. *Notice to husband, as agent of wife.*—Notice to an agent, acquired while he is transacting the business of the agency, is constructive notice to his principal; and this principle applies as between husband and wife, charging the wife with constructive notice of facts, which

came to the husband's knowledge while acting as her agent and trustee in the purchase of property, and avoiding the conveyance to her on the ground of fraud.

APPEAL from the Chancery Court of Cherokee.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 16th February, 1889, by Goodbar, White & Co., merchants and partners doing business in the city of St. Louis, and judgment creditors of J. B. Mackey, against J. M. Daniel and his wife, Mrs. Myra J. Daniel; and sought (1) to set aside, on the ground of fraud, a conveyance of a tract of land to Mrs. Daniel by said Mackey and wife; (2) to have an account of the moneys invested by said Mackey in the purchase of said land, and the amount declared a lien on the land for the satisfaction of complainants' judgment against him; and (3) to set aside a credit entered on their judgment for $250, bid by them at the sheriff's sale under their execution, on the ground that their bid was made under a mistake and misapprehension of their rights.

The complainants' debt was contracted during the year 1881, for goods sold on credit, at different times, to said Mackey, who was then carrying on a mercantile business at a place called Leesburg, which was situated on the tract or land involved in this suit, where he also resided with his family. In the latter part of the year 1881, Mackey became embarrassed, and some of his creditors threatened suits; and on the 20th December, 1881, he executed an assignment, or deed of trust "conveying property therein mentioned to the amount of $4,000, to J. B. Hale as trustee, for the benefit of certain specified creditors, among whom were complainants." This instrument recites an indebtedness by said Mackey at that time, to various creditors, amounting to $6,733.93; and it was filed for record on the 24th December, 1881, and duly recorded on the 13th January, 1882. On the 27th January, 1882, the complainants sued out an attachment against Mackey, on the ground that he had fraudulently disposed of his property; and the attachment was levied on his stock of goods, and also on said tract of land. A claim to the stock of goods was interposed by Hale, the assignee, and bond given to try the right of property; and in February, 1884, said claim suit "was tried and determined in favor of complainants." On the 21st February, 1884, the complainants obtained judgment against Mackey, in the attachment suit, for $1,254.13, "and also judgment of condemnation of the

said tract of land for the satisfaction thereof." A *venditioni exponas* was issued on this judgment, under which the land was sold on the 5th May, 1884; the complainants becoming the purchasers at the bid of $250, which was entered as a credit on their judgment, and the sheriff executed to them a deed for the land.    This is the credit which the bill seeks to set aside.

The bill alleged that, after the levy of the attachment, and before the sale of the land under the *vend. exponas*, complainants' attorneys repeatedly examined the records of the county, to ascertain in whom the title to the land was vested, but could not find any deed on record, "and complainants aver that there was none;" that they discovered on record, in the latter part of the year 1888, what purported to be a deed executed by said Mackey and wife to Mrs. Myra J. Daniel, on the 28th January, 1882, and filed for record on the 5th May, 1884, conveying the said tract of land to Mrs. Daniel; that this deed recited, "among other things which complainants deny to be true, that said lands are the statutory separate estate of the said Sallie C. Mackey, and were conveyed by her and her said husband to said Myra J. Daniel in consideration of $2,500, of which $701 is paid down, $1,398.80 paid in three promissory notes made by William Hamilton to Myra J. Daniel," describing them, "and the remaining $400 due by promissory note of said Myra J. and her husband, J. M. Daniel, due December 15th, 1883;" and that after discovering this deed on record, by diligent inquiry among persons who lived in the neighborhood, they ascertained the following facts in reference to the title to said lands:

The tract of land had belonged to Jeff. Pullen, who was a brother of Mrs. Mackey, and was sold by him, several years prior to 1881, to James Lybass, who entered into possession, but did not pay the purchase-money.    Some time afterwards, the exact time not shown, Lybass sold the land to Silas Neal, and placed him in possession; and afterwards, the purchase-money due to Pullen, or a portion thereof, being still unpaid, "Neal and wife sold said land to J. B. Mackey, and placed him in possession."    In part payment for said land, "Mackey and wife executed to Mrs. Neal, for her interest therein, a deed to another tract of land, exact quantity not known, worth about $500, which belonged to Mrs. Mackey; and said J. B. Mackey paid and agreed to pay said Silas Neal some amount, not known to complainants, and also to pay the balance of the purchase-money, when and as it became due, to said Jeff.

[Goodbar, White & Co. v. Daniel.]

Pullen; and thereupon said Mackey moved upon the land, built the store-house, and made valuable repairs and improvements to the amount of $600, or other large sum." It was alleged, also, that Mackey paid Neal about $600 on his purchase of the land, "and paid several hundred dollars to said Pullen during said year;" that afterwards, having become insolvent, he transferred to Pullen, in payment for the land, property, notes and accounts, of value more than $1,000; that he paid the balance of purchase-money before it was due, and, with the intent to hinder and defraud his creditors, took the title in the name of his wife; that said deed to Mrs. Mackey was never recorded, and was executed and delivered on the same day the deed from Mackey and wife to Mrs. Daniel was executed; that the contract was negotiated on the part of Mrs. Daniel by her husband, who was present at the sale of the land under the complainants' judgment, had knowledge of Mackey's insolvency, and of all the facts connected with the alleged fraud on his part, and that he afterwards paid to Mackey the balance of the agreed purchase-money. On these facts, as alleged, the complainants insisted that the conveyance to Mrs. Daniel was fraudulent as to them, and that she was chargeable with notice of the fraudulent intent on the part of Mackey; and they prayed that the deed be declared void as to them, and that the land, to the extent of the money paid by Mackey in its purchase and improvement, be decreed subject to a lien in their favor for the amount due on their judgment.

The defendants demurred to the bill, because "(3) it shows that complainants had an adequate remedy at law by ejectment;" and they afterwards filed another demurrer, assigning the following with other causes: "(2) because it does not aver any collusion or knowledge of any wrong or fraud on the part of Mrs. Myra J. Daniel;" "(3) because the levy and sale of the land was a satisfaction, *pro tanto*, of complainants' judgment and execution, which a court of equity can not vacate;" "(7) the complainants having purchased at their own sale, the doctrine of *caveat emptor* applies, and they can not set aside their sale and purchase on the ground of mistake." The chancellor sustained the demurrer on these grounds, and his decree is here assigned as error by complainants.

MATTHEWS & DANIEL, for appellants.—(1.) The complainants had no remedy at law, because the legal title to

the land never was in their judgment debtor; their only remedy was in equity.—*Smith v. Cockrell*, 66 Ala. 64; *Teague v. Martin*, 87 Ala. 500; *Pickett v. Pipkin*, 64 Ala. 521; *Flewellen v. Crane*, 58 Ala. 627. (2.) On the allegations of the bill, Mrs. Daniel is chargeable with knowledge of Mackey's fraud, her husband acting as her agent, and having actual notice of the facts.—*Robinson v. Pebworth*, 71 Ala. 245. (3.) The demurrer admits that the bid at the sheriff's sale was made under a mistake as to the facts, and that this was caused by the fraud and collusion of Mackey and the defendants in concealing the facts; and this takes the case out of the general doctrine governing sheriff's sales. Even if the point is well taken, it goes only to the extent of the relief to be granted.

WALDEN & SON, *contra*.—(1.) A purchaser at sheriff's sale acquires only the interest of the defendant in execution, as if he had taken a quit-claim deed. The doctrine of *caveat emptor* applies—the purchaser buys at his own risk, and if he gets nothing, a court of equity will not grant him any relief.—*McCartney v. King*, 25 Ala. 681; *Lamkin v. Crawford*, 8 Ala. 153; *Perkins v. Winter*, 7 Ala. 868; 60 Ill. 164; 69 Ill. 431; 8 Geo. 236; 32 Geo. 376; 4 Texas, 431; 26 Texas, 429; 27 Texas, 322. (2.) The complainants had an adequate remedy at law, if the facts alleged be true.—*Smith v. Cockrell*, 66 Ala. 64; *Grigg v. Swindal*, 67 Ala. 187; *Pettus v. Glover*, 68 Ala. 417. (3,) No fraud is shown, as against Mrs. Daniel.—*Pickett v. Pipkin*, 64 Ala. 520; 38 Ohio St. 76. (4.) It is a significant fact, that complainants, having a judgment against Mackey for over $1200, bid only $250 for land worth $2,500; and they ask to be relieved of that bid.

SOMERVILLE, J.—1. The court, in sustaining the *third* ground of the first demurrer, ruled that the complainants, under the facts stated in the bill, had a plain and adequate remedy at law by the action of ejectment. This view can be supported only on the theory, that when the complainants purchased the land in controversy, at the sheriff's sale under the execution issued against J. B. Mackey on their judgment, they bought the legal title. We have many times held, that a purchaser of the legal title to land, sold under execution at a sheriff's sale, has a plain and adequate remedy at law by ejectment, although the land had been fraudulently

[Goodbar, White & Co. v. Daniel.]

conveyed by the judgment debtor prior to such sale.—*Smith v. Cockrell*, 66 Ala. 64; *Teague v. Martin*, 87 Ala 500. In this case, however, assuming the allegations of the bill to be true, as we must do on demurrer, Mackey never acquired the legal title to the land, but an equity only. One Pullen formerly owned the land, and conveyed it to Mrs. Mackey, the wife of said J. B. Mackey, the judgment debtor, her husband being alleged to have paid most of the purchase-money out of his own effects. Mackey and wife afterwards conveyed to Mrs. Myra J. Daniel, one of the defendants in the bill. One of the questions which arose in *Smith v. Cockrell*, 66 Ala. 64, *supra*, was, whether precisely such an interest was subject to levy and sale under execution, as a "perfect equity" within the meaning of section 3207 of the Code of 1876, which is now section 2892 of the present Code of 1886. We held that it was not subject to sale, and, consequently, that the purchaser at such execution sale acquired no title of any kind, legal or equitable.

On the authority of that case, the complainants, under the facts stated in their bill, acquired no interest of any kind in the land, and certainly not the legal title. They had no remedy, therefore, at law, by ejectment, or otherwise. The third ground of the *first* demurrer was erroneously sustained.

2. The complainants are shown to have bid at the sheriff's sale for the land the sum of two hundred and fifty dollars ($250.00), and they credited this sum on their judgment against Mackey, which was for something more than $1,250. The chancellor properly ruled, in sustaining the third and seventh grounds of the *second* demurrer, that this credit was *pro tanto* a satisfaction of the complainants' judgment, which a court of equity would not vacate on the ground that the defendant in execution had no title, and the complainants acquired nothing by their purchase at the sheriff's sale. The question, whether a purchaser at sheriff's sale will be relieved from the effect of his bid, on its being made to appear that the defendant in execution had no title whatever to the thing supposed to be sold, or whether his bid is an irrevocable satisfaction of the judgment to the extent of the sum bid at the sale, is one on which the authorities are about equally divided.—Freeman on Judgments (3d Ed.), § 478; 2 Freeman on Executions (2d Ed.), § 54.

The question was settled in this State as far back as the year 1854. In the case of *McCartney v. King*, 25 Ala. 681, it was held that the amount bid by a judgment creditor for

certain slaves sold at sheriff's sale, to which the judgment debtor had no title, was properly credited upon the execution, and was a satisfaction of it, against which a court of chancery would give no relief by vacating the sale. The principle was thus stated by Judge Goldthwaite: "The true doctrine, we think, is this: The purchaser, where the sheriff is not indemnified, buys at his own risk, and if it should turn out that the defendant in execution has no title to the property, he is notwithstanding liable for the amount of his bid. This is on the ground of contract. The officer sells, and the purchaser buys, (not the thing itself, but) the real or supposed right which the defendant in execution has to it; and the *purchase operates precisely the same as if he had bargained for and obtained a quit-claim.*" It appeared in that case that the purchase was made with notice of the defect of title. That, in our opinion, can make no difference in the absence of fraud. The basis of the whole doctrine is the rule of *caveat emptor*, which is the established and well understood rule of sheriff's sales. This rule puts every holder upon inquiry as to the defendant's title. It proclaims to the purchaser that there is no warranty of title, and if he buys, he must do so at his own risk. It warns him to go and inquire before purchasing; so that, if he makes a poor bargain, by parting with his money without getting anything in return for it, he must enter no complaint—no more than if he had bargained for and obtained a mere quit-claim deed.—*Smith v. Painter*, 5 Serg. & R. 225. In the language of Chief-Justice Gibson, in *Freeman v. Caldwell*, 10 Watts (Pa.) 9: "The plaintiff's case may be a hard one, but it is not more so than would be the case of a stranger; and to say that every sheriff's vendee, who is deprived of the property by title paramount, shall have his money again, would destroy all confidence in the stability of judicial sales." And again, as observed in another case: "If this was not the law, an execution, which is the end of the law, would only be the commencement of a new controversy." The doctrine of these cases has long been supposed to be the law of Alabama, and we adhere to them as sound. *Jones v. Burr*, 53 Amer. Dec. 699, and *note* on pp. 701–705; 2 Freeman on Executions (2d Ed.), § 54, and cases cited.

3. The bill shows that the defendant, J. M. Daniel, acted as the agent of his wife, Mrs. Myra J. Daniel, in making the purchase of the land, in taking the deed of conveyance for it, and in paying the purchase-money over to the

[Goodbar, White & Co. v. Daniel.]

vendor. He thus acted for her in the whole transaction of purchase, as her authorized agent. This was in January, 1882, when the statutes of this State made the husband the trustee of the wife's statutory separate estate, with power to control and manage the same, and charged him with the duty of reinvesting the proceeds of its sale in other property, which also became the separate estate of the wife.—Code, 1876, §§ 2706, 2709. As *husband*, therefore, Daniel was the agent of his wife for the purpose of making this investment, independently of his appointment by her to such agency. The bill does not allege positively that the purchase-money used was Mrs. Daniel's statutory separate estate; but, taking its averments most strongly against the pleader, the inference is, that the money and notes invested by her alleged agent were hers, and, if hers, presumptively the property was her statutory separate estate.—*Steed v. Knowles*, 79 Ala. 446.

The alleged fraudulent deed from Pullen to Mrs. Mackey, and the one from Mackey and wife to Mrs. Daniel, are stated to have been executed on the same day—January 28th, 1882. The averment, then, that J. M. Daniel had knowledge of the fraudulent character of the deed taken from Pullen to Mrs. Mackey, by necessary implication charges that this knowledge was acquired during the time of his agency, and within the scope of his duty and power as trustee of his wife's separate estate. There are cases which hold to the doctrine, that knowledge of a material fact acquired by an agent in a former transaction, comparatively recent in point of time, such as he is bound to communicate, if present in his mind and memory while engaged in a second transaction, shall operate as constructive notice to his principal in the second transaction.—2 Pom. Eq. Jur., § 672. But there is a long line of decisions in this State which adopt the rule, that notice to an agent, to bind his principal, must have been acquired by the agent during his employment—*i. e.*, while he is actually engaged in the prosecution of his duties as agent, and not at a time antecedent to the period of his agency. *Wheeler v. McGuire*, 86 Ala. 398; *McCormick v. Joseph*, 83 Ala. 401; *Reid v. Bank of Mobile*, 70 Ala. 199; *Pepper v. George*, 51 Ala. 190; *Terrell v. Br. Bank*, 12 Ala. 502; *Mundin v. Pitts*, 14 Ala. 84; *Lucas v. Bank*, 2 Stew. 321.

This principle is one based on expediency and sound policy. A different rule, as long ago suggested by Lord Hardwick, "would make purchasers' and mortgagees' titles depend alto-

[Rome & Decatur Railroad Co. v. Chasteen.]

gether on the memory of their counselors and agents, and oblige them to apply to persons of less eminence as counsel, as not being so likely to have notice of former transactions." In other words, a contrary rule would render it hazardous for persons to employ efficient agents of broad knowledge and wide experience, and force selections to be confined to men of ignorance in affairs, and with narrow, or no experience. 2 Pom. Eq. Jur. §§ 670–671. Moreover, a designing agent would be armed with the power of bringing financial ruin on his innocent principal, by the intentional, or even fraudulent refusal, to communicate to him his previous acquired knowledge of a secret equity in property, or other latent defect of title, the concealment of which was dictated by the agent's greed in earning his commission, or other equally selfish end.

In this case, the knowledge of the husband, as to the alleged fraud, must be constructively imputed to the wife as her knowledge.—*White v. King*, 53 Ala. 162; *Dunklin v. Harvey*, 56 Ala. 177; Wade on Notice, § 679.

Under these principles, the court erred in sustaining the second assignment of the second demurrer.

The decree of the chancellor is reversed, and the cause is remanded, that a decree may be rendered on the demurrers in conformity to the principles announced in this opinion.

Reversed and remanded.