Johnny L. Carter (appellee) purchased certain property which was sold by the sheriff in an execution sale to satisfy a judgment enforcing a materialmen's lien. Approximately one year later, when other judgment creditors and materialmen's lienholders sought to execute on the same property, appellee Carter filed this action against the sheriff and the other judgment creditors (appellants) to enjoin the execution sale sought by appellants. The trial court granted the injunction requested by Carter. Hogan and the creditors appealed this action; we reverse and remand.
 FACTS
In December 1977 Hubert and Frances McLemore acquired the disputed property with the intention of building a restaurant. They purchased building materials from Collins Supply, Inc. (Collins), Anderson Supply Company, Inc. (Anderson), and Julian Coffman d/b/a C R Sheet Metal (C R). On January 23, 1978, about six weeks after acquiring the property, the McLemores executed a mortgage for $21,500 to the First Alabama Bank of Athens (which is not a party to the instant case). On February 28, 1978, Collins filed a verified statement of materialmen's lien and an action against the McLemores to recover some $11,000 claimed to be owed for materials furnished, and "to have the mortgage of First Alabama Bank of Athens subrogated to plaintiff's lien." On September 25, 1978, Collins took by default a judgment for $12,090, *Page 1162 
which was later amended as to the amount, and which also declared and established in favor of Collins a lien for materials furnished and work and labor done on the subject property. Subsequently, on February 28, 1979, a final judgment was entered declaring the lien of Collins to have priority over the mortgage of First Alabama Bank. Rather than proceeding to cause the property to be condemned and sold in satisfaction and discharge of the established lien of Collins, an execution was issued on March 22, 1979, to the sheriff, which resulted in a sheriff's sale on April 24, 1979, at which Carter purchased the property for $11,000. The proceeds of the sheriff's sale on the execution of Collins's judgment were paid out to satisfy the judgment of Collins, with an excess of $259.12. Limestone Drug Company, Inc., another judgment creditor, filed a garnishment against the circuit clerk and with the written consent of the McLemores, the excess of the sale proceeds was paid to Limestone Drug Company, Inc. Both Collins and Limestone Drug were represented by the same attorney.
Appellants, other than Sheriff Hogan, as creditors of the McLemores, filed verified statements of materialmen's liens and actions to reduce their respective claims to judgment and to enforce their materialmen's liens. Anderson received a judgment against the McLemores on June 26, 1978, for $3,641.84; C R received its judgment against the McLemores on September 5, 1978, for $3,000.00; Carmen Southard received a judgment against Frances McLemore on September 18, 1978, for $500.00; Arnold Institutional Foods, a corporation, received on October 3, 1978, a default judgment against Frances McLemore for $2,807.55; and Garth Insurance Company, Inc., apparently received a judgment based upon a lien arising out of a writ of attachment, but the trial court found it to be subordinate to the other materialmen's liens against the McLemores.
On April 15, 1980, appellants C R, Anderson, and Southard commenced execution proceedings to cause the subject property to be sold in satisfaction of their judgments and materialmen's liens.
The suit of appellee Carter seeking to enjoin the sale was heard and submitted upon written stipulations of fact, oral testimony, and arguments of counsel. The trial court found that the first execution sale was not rendered void by any defects in the sale, and found that appellee Carter took the property in question free and clear of all other liens other than the mortgage to the First Alabama Bank of Athens. As to the question of whether the holders of the other materialmen's liens (appellants) have equal standing to enforce their liens on the property, the trial court found that there had been no consolidation as to all of the lien claimants in the Collins suit. Therefore, the failure to consolidate the cases defeated the claim of the other lienholders under Code 1975, §35-11-228.
Finally, the trial court granted the relief prayed for by appellee Carter, thus granting an injunction against appellants as to the proceedings to cause a subsequent execution sale by the sheriff.
Evidence was adduced in the trial of this case, which was not controverted, that the fair market value of the property at the time of the first execution sale was between $40,000 and $50,000. In December 1978, the McLemores attempted to sell their property by auction. The highest bid was $45,000, but no sale was made because this amount was insufficient to clear the outstanding liens against the property.
 THE DECISION
Appellants ask this Court to overturn the injunction Carter obtained against the second sale. By way of cross-claim, appellants claimed that the first execution sale was invalid due to the irregularities in the conduct of the sale, and asked that the subject property be sold again by the sheriff at execution sale so that they can share in the proceeds of the sale.
The statutory requirements for a sale of levied on property were not followed in several respects. Notice of Collins's sale was posted for less than 30 days, in violation of Code 1975, §6-9-87. The sale was *Page 1163 
held on a Tuesday, contrary to Code 1975, § 6-9-86, which provides: "Lands, when levied on under execution from any court of record, must be sold on any Monday." The sale had been set for Monday, April 23, 1979, but that Monday was a legal holiday. Therefore, the sheriff announced to those who appeared on Monday that the sale would be continued to the following day. The appellants argue that Code 1975, § 6-9-86, makes no provision for continuance on the ground that the scheduled sale day was a holiday. This section states: "The sale may be continued from day to day if rendered necessary by the inclemency of the weather or from inability to conclude the sale in one day." The appellants contend that the sheriff should have published a postponement notice under Code 1975, §6-8-69.
Appellants maintain that these irregularities, in combination with the insufficient purchase price (Carter paid about one-fourth of the market value of the property), require that the sale be declared invalid. Courts have the power to set aside "a sale made under any legal process [when] infected with fraud, oppression, irregularity or error to the injury of either party," Code 1975, § 6-9-147, or when the sales price is "so grossly inadequate as to shock the conscience of a fair and honest man." Dunn v. Ponceler, 235 Ala. 269, 274, 178 So. 40,44 (1937).
This Court has held that procedural irregularities alone are not enough to invalidate the sale. Dean v. Lusk, 241 Ala. 519,3 So.2d 310 (1941); Bonner v. Lockhart, 236 Ala. 171,181 So. 767 (1938). Nor is inadequacy of price enough unless it is so extreme, or so related to procedural irregularities, as to create a presumption of fraud. Madison v. Ware, 277 Ala. 408,171 So.2d 117 (1965); Martin v. Jones, 268 Ala. 286,105 So.2d 860 (1958). In addition, the terms of our statute appear to allow the setting aside of sales for reasons not limited to fraud, and in practice most courts seem to take a common-sense approach to all the circumstances, including the price, the likely effect of procedural irregularities, inequitable conduct, evidence of mistake or misapprehension, and problems with title. See generally Annot., 5 A.L.R. 4th 794 (1981). Under Code 1975, § 6-9-147, such factors may appropriately be considered. The ultimate determination is largely within the discretion of the trial court. Cox v. Cox, 267 Ala. 372,102 So.2d 23 (1958).
However, while each of the general rules, taken individually, is correct, the various irregularities involved in this sale, taken together with the inadequacy of the sales price, compel this Court to order that this sale on execution be set aside.
This approach has gained judicial acceptance. "[V]irtually all courts recognize that inadequacy of price, in some degree, combined with some form of other circumstances, especially those indicative of fraud or unfairness on the part of the purchaser, or mistake, does justify the setting aside of an execution sale." (Emphasis added.) Annot., 5 A.L.R. 4th 794, 802 (1981). Mason v. Wilson, 116 Ariz. 255, 568 P.2d 1153
(Ariz.App. 1977), exemplifies this approach:
 "A court may order an execution sale set aside on the basis of two grounds: First, the purchase price received at the sheriff's sale may be so inadequate as to shock the conscience of the court and justify setting aside the sale, Nussbaumer [v. Superior Court In and For County of Yuma, 107 Ariz. 504, 489 P.2d 843 (1971)], supra; Wiesel v. Ashcraft, 26 Ariz. App. 490, 549 P.2d 585 (1976). Second, where there is an inadequacy of price which in itself might not be grounds for setting aside the sale, slight additional circumstances or matters of equity may so justify."
568 P.2d at 1155.
While the price received in the case before us may not be so inadequate as to shock the conscience, the accompanying procedural irregularities constitute additional circumstances which, together with the inadequate sales price, justify setting aside the sale. This Court has stated:
 "When the property is purchased by a stranger, the sale will not be set aside for mere inadequacy of price, no matter how *Page 1164 
gross, unless there is some unfair practice at the sale or unless there is mistake or surprise, without fault on the part of those interested."
Martin v. Jones, 268 Ala. 286, 288, 105 So.2d 860, 863 (1958). In the case before us, the sales price of $11,000 was clearly inadequate, particularly in light of the December 1978 bid of $45,000. This inadequacy, taken in conjunction with the failure to give notice for 30 days prior to the sale, failure to hold the sale on Monday as required by law, and failure to publish notice of postponement, constitutes the type of "unfair practice at the sale" which mandates that the sale be set aside in this case.
Appellee urges this Court to hold that appellants should be barred by laches from now contesting the validity of the sale, or claiming any portion of the proceeds. We disagree.
The question of laches must be considered in light of Code 1975, § 6-9-211, which provides that a recorded judgment shall be a lien on the property of defendant in the county for ten years. Thus the delay here[1] was well within the time period contemplated by the legislature for enforcement of liens. Delay permitted by the statute of limitations does not constitute laches, in the absence of special facts making the delay culpable. Sims v. Lewis, 374 So.2d 298 (Ala. 1979); Lipscomb v.Tucker, 294 Ala. 246, 314 So.2d 840 (1975). No such special facts are shown here. Carter purchased subject to the interests of the other materialmen's lienholders, who were not bound by Collins's action. Code 1975, §§ 6-9-142, 35-11-223 (a). Under these circumstances, Carter has not established the basic element of laches — prejudice resulting from the other parties' delay. Murphree v. Henson, 289 Ala. 340, 267 So.2d 414
(1972).
Appellants also present the issue of relative priority of the various claims to the property. Since we hold that the execution sale to Carter is invalid, the trial court, on remand, will have the opportunity of establishing the various priorities among the judgment creditors involved in this proceeding. To aid the trial court in this determination, we call attention to the provisions of Code 1975, § 35-11-228, which provides "All liens arising under this division, except in favor of the original contractor, shall stand on an equal footing. . . ." In its brief, Collins contends that it was an original contractor and as such, would have been entitled to priority over appellants Anderson and C R. From the record, it does not appear that the trial court made a finding on this issue, since the trial court held the sale valid. There appears to be in the record some evidence that appellants Anderson and C R each filed a verified statement of materialmen's lien as an original contractor. If the trial court determines this as a factual matter, and assuming that the notice of lien and the suit were timely filed and properly perfected, then those judgment creditors who established valid materialmen's liens as original contractors would stand on an equal footing, and under Code 1975, § 35-11-211, would have priority "over all other liens, mortgages or incumbrances created subsequent to the commencement of work on the building or improvement."
We reverse and remand for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
MADDOX, FAULKNER, ALMON and SHORES, JJ., concur.
JONES, EMBRY, BEATTY and ADAMS, JJ., concur in part and dissent in part.
[1] About 22 months elapsed between the recording of Anderson's judgment and its execution; this period was about 18 months for C R.