MADDOX, Justice.
This appeal is taken from a St. Clair County Circuit Court judgment which vacated an execution sale of 35 acres of real property located in St. Clair County. The only issue on appeal is whether the trial court erred in ruling that this execution sale can be vacated.
On December 6, 1983, pursuant to a default judgment obtained by Central Bank of St. Clair County, the St. Clair County sheriff levied on 35 acres of real property owned by C. A. Tarpley. The judgment was executed and the property sold at public auction on January 9, 1984, to appel-lee/plaintiff Jamie Burton for $16,500.00. Appellee received a sheriff’s deed giving him all of Tarpley’s right, title, and interest in the property, which had an appraised value of $21,000.00.
Appellee testified that just prior to the auction, he had a conversation with “under-sheriff” Marty Cole, the person conducting the sale, who told him that “the property would have to bring enough to pay the first mortgage ... Sixteen Thousand Three Hundred Dollars,” and if he bid that amount, he would get the land “free and clear.” Apparently, appellee assumed that this first mortgage was held by the judgment creditor which instituted the execution sale, although he testified that he did not know the identity of the judgment creditor; thus, appellee testified that when he bid $16,500.00, he thought that the only outstanding lien was satisfied and that he had clear title to the property.
There were, however, two encumbrances upon the land at the time of the execution sale: Central Bank’s lien, and a first mortgage in the amount of $15,189.04, held by Federal Land Bank of New Orleans.
On April 9, 1984, Federal Land Bank, seeking to satisfy its mortgage, filed a *1082 motion with the St. Clair County Circuit Court for disbursement of the money still held by the circuit clerk that appellee paid for the property. Thereafter, realizing that he did not have clear title, appellee filed a motion to vacate or set aside the execution sale and asked for a refund of his money. The circuit court, sitting in equity, heard testimony presented ore ten-us, and ruled that the “undersheriff” erroneously advised appellee that there was only one outstanding lien on the property, the satisfaction of which would result in a clear title, and that appellee detrimentally relied on the “undersheriff s” misrepresentation when he bid on the property. The court ordered: “[T]he sheriff’s sale is hereby set aside and held for naught and ... the sheriff’s deed heretofore delivered to Jamie Burton is hereby cancelled and set aside. The clerk of this court is hereby ordered to pay over to said Jamie Burton the money that said Jamie Burton paid into court as the purchase price of said property.” Central Bank appealed to this Court.
Appellee asserts here, as below, that Code 1975, § 6-9-147, is controlling under the instant facts:
“Courts have full power over their officers making execution on judicial sales, and whenever satisfied that a sale made under any legal process is infected with fraud, oppression, irregularity or error to the injury of either party, the sale will be set aside.”
Recently, in Hogan v. Carter, 431 So.2d 1160 (Ala.1983), we addressed and reaffirmed the validity and vitality of § 6-9-147. In Hogan, the appellee purchaser sued to enjoin a second execution sale of the subject property. The appellants, judgment creditors of the property owner, sought a second execution sale in order to satisfy their outstanding liens. The trial court, finding for the appellee/purchaser, enjoined a second execution sale. On appeal, this Court found that the trial court erred in not setting aside the first execution sale because the sale price was “clearly inadequate,” and there, were “accompanying procedural irregularities.” Id. at 1163-64.
A review of our cases interpreting the application of § 6-9-147 (and predecessor statutes) to execution sales reveals that most are either similar to Hogan, supra, in that the person seeking to have the sale set aside was a creditor and the person seeking to have the sale upheld was the purchaser; or they involve a situation where the defendant debtor seeks to have the sale vacated and the purchaser, who may also be the plaintiff creditor, seeks to have the sale upheld. See e.g., Cox v. Cox, 267 Ala. 372, 102 So.2d 23 (1958); Danforth v. Burchfield, 201 Ala. 550, 78 So. 904 (1918); Simmons v. Sharpe, 138 Ala. 451, 35 So. 415 (1903); Littell v. Zuntz, 2 Ala. 256 (1848). Here, however, we have the purchaser seeking to have the sale vacated and the plaintiff creditor seeking to have it upheld. Appellant Central Bank argues that § 6-9-147 is inapplicable to these facts.
Specifically, Central Bank argues that the rule of caveat emptor, as codified in Code 1975, § 6-9-142, controls the instant facts:
“The purchaser must look for himself as to the title and soundness of all property sold under judicial process. Actual fraud or misrepresentation by the officer or his agent may bind him personally. No covenant of warranty binds him individually unless made with that intention for a valuable consideration and in writing.”
Central Bank cites us to McCartney v. King, 25 Ala. 681 (1854), where this Court said:
“The true doctrine we think, is this: the purchaser, where the sheriff is not indemnified, buys at his own risk, and if it should turn out that the defendant in execution has no title to the property, he is notwithstanding liable for the amount of this bid. This is on the ground of contract. The officer sells, and the purchaser buys (not the thing itself, but) the real or supposed right which the defendant in execution has to it; and the purchaser operates precisely as if he had *1083 bargained for and obtained a suit-claim.” Id. at 691.
Appellee cites us to no cases in any jurisdiction where an execution sale has been vacated in favor of the purchaser and against the plaintiff creditor. Our own research has uncovered very sparse authority for the vacation of an execution sale in favor of the purchaser as against the plaintiff creditor when title fails because of a prior mortgage by the defendant debtor. See Nolen Motor Co. v. Stephenson, 147 So.2d 462 (La.Ct.App.1962) (holding that the execution purchaser “has a right to call in warranty” the execution creditor, but construing a Louisiana statute that provides “the purchaser evicted from the property purchased under execution, recourse for reimbursement against the debtor and creditor”).
We hold that the better rule of law, and the one contemplated by §§ 6-9-142 and 6-9-147, is that, generally, an execution sale cannot be vacated in favor of a purchaser and against a defendant creditor when title fails because of an outstanding mortgage on the property of which he, the purchaser, has actual or constructive notice. As is clearly set forth in § 6-9-142, the purchaser “must look for himself as to the title and soundness of all property sold under judicial process.” The purchaser’s remedy, if any, for fraud or misrepresentation on the part of the officer conducting the sale would be against the officer conducting the sale — not the defendant creditor.
We do not hold that situations will never arise where § 6-9-147 could be applied to vacate an execution sale as between the purchaser and the defendant creditor when title fails. For example, the defendant creditor may be guilty of fraud, or title may fail for reasons other than the debt- or’s prior mortgage of the property. See generally, Annot., 33 A.L.R. 4th 1206 (1984). Such situations, however, are not now before us, and we decline to decide them at this time.
We realize that appellee now holds title to 35 acres of real property worth $21,000.00 for which he paid $16,500.00, but which is still encumbered by a mortgage in the amount of more than $15,-000.00. Appellee’s unfortunate position, however, is in no way due to Central Bank’s actions, and the strong policy of promoting the stability and finality of execution sales, as well as our construction in pari materia of §§ 6-9-142 and 6-9-147, necessitates the upholding of this execution sale.
Although we are mindful of the fact that the question of the vacation of an execution sale is “largely within the discretion of the trial court,” Hogan, supra, at 1163, we, nevertheless, hold that this execution sale must be upheld. The judgment is reversed and the cause remanded to the trial court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.