ANDREW J. CONKLIN ET AL. *v.* ALABAMA & VICKSBURG RAILWAY COMPANY.

1. TRESPASS TO LANDS. *Death of owner. Survival of actions. Parties. Heirs.*
   The heirs of a decedent cannot recover at law for a trespass to the lands of their ancestor committed in his lifetime, although there is no administration upon or debt due by the estate of the decedent.

2. SAME. *Code* 1892, §§ 1916, 1917. *Executors and administrators.*
   Code 1892, §§ 1916, 1917, providing for the survival of causes of action, give the right to sue for trespass to lands, upon the death of the owner, to his executor or administrator and not to his heirs.

FROM the circuit court of Warren county.
HON. GEORGE ANDERSON, Judge.

Conklin and another, appellants, were plaintiffs in the court below; the railway company, appellee, was defendant there. The suit was an action at law for trespass to lands; the declaration charged that the plaintiffs were owners of the lands at the time the trespass was averred to have been committed by the defendant. The plea was the general issue. Upon the trial title was shown in one Mrs. Ann Conklin, who died intestate before the suit was begun. Thereupon the plaintiffs offered to show that they were the heirs of the decedent and inherited the lands upon her death; that she died owing no debts, and that administration on her estate had never been granted, and there was no necessity for administration. The court below declined the proffered evidence and gave a peremptory instruction to the jury in defendant's favor. From a judgment for defendant plaintiffs appealed to the supreme court.

*Shelton & Brunini,* for appellants.

The general rule is that the legatee or distributee cannot sue either at law or in equity to recover the personal assets of the estate. There are exceptions to this rule, which are based on the principle that where the circumstances are such that the reason of the rule ceases, the rule itself ceases. 13 Ency. Pl. & Pr., pp. 3, 4; *McGhee* v. *Alexander,* 104 Ala., 120; *Cooper* v *Davidson,* 5 So. Rep., 650. There are several cases in Mississippi where the question has been decided: *Hargroves* v. *Thompson,* 31 Miss., 215; *Maxwell* v. *Craft,* 32 Miss., 307; *Wood* v. *Ford,* 29 Miss., 65; *Hill* v. *Boyland,* 40 Miss., 642; *Ricks* v. *Hilliard,* 45 Miss., 359.

The authorities show that this court has held this proposition: That the sole purpose of administration is to collect the assets and pay the debts and distribute the balance to the distributee; and that if the decedent owed no debts, the title to the personalty vests immediately in the distributee, freed from the change in favor of creditors, and that, therefore, there is no necessity

for an administration, and that the distributee can sue in his own name.

It has happened that all cases decided by the Mississippi court have gone up from the chancery court, but we do not conceive that the fact confines the remedy to the chancery court. It has simply occurred that the cases in which the question arose were chancery cases, and not cases at common law.

We insist that the subject of this suit is not an asset of the estate which goes to the administrator (whether there be debts or not).

In only two cases in this court has the right of the administrator to sue for trespass to real estate come into question. In *New Orleans, etc., R. Co.* v. *Moye,* 39 Miss., 374, the action for damages caused by trespass on real estate was brought by the administrator of the deceased owner, in whose lifetime the trespass occurred. The objection was made in the lower court and overruled, and the action of the lower court in overruling it was assigned for error in the supreme court, but while the supreme court affirmed the case, the opinion does not in any way refer to that assignment. It appears only in the syllabus of the case and the digest.

In *Wilkerson* v. *Jenkins, Admr.,* 77 Miss., 603, the suit for the trespass was begun by the intestate in his lifetime and revived in the name of the administrator. No point was made on this revivor, but the case was reversed because of a change of venue, the court holding that under § 650 of the annotated code, the action was local and the venue could not be changed. In other words, the court held that it was a real action upon a claim growing out of real property, and not a personal action.

The decision, in 39 Miss., *supra,* is easily accounted for, as art. 46, page 485, code of 1857, provides as follows: "Executors and administrators shall and may have an action for any trespass done to the person or property, real or personal, of their testator or intestate against the trespasser, and recover damages in like manner as their testator or intestate would have had, if

living; and the money so recovered shall be assets, and accounted for as such."

This provision was brought forward in the code of 1871, § 674, and the code of 1880, § 2079, but it is entirely omitted in the code of 1892. The only sections on the subject of suits by and against executors and administrators in the code of 1892 are §§ 1916 to 1921, inclusive.

Section 1916 provides that executors and administrators may commence and prosecute any personal action whatever at law, or in equity, which the testator or intestate might have commenced and prosecuted.

Section 1917 makes the executor and administrator of a deceased wrongdoer liable to action for the wrong, which action would have died at common law with the wrongdoer.

Section 1918 simply provides that the death of a party shall not abate the suit in personal actions.

Section 1920 gives the administrator or executor the power to maintain actions on any contract which may accrue in the course of administration, and § 1921 simply provides for suit by one administrator or executor against another. It will be noted that all of these sections refer to personal actions, except § 1917, the object of which clearly is to preserve the right of action against the executor or administrator of a wrongdoer; and from these sections it is evident that the legislature intended to confine the right of action of an executor or administrator to personal claims alone, accruing in the lifetime of testator or intestate; and this is made apparent by the omission of the section which had been a law of the state since 1857, and which vested in the administrator the right to sue for trespass committed on real estate, and made the proceeds of a suit assets for the payment of debts.

The provision was put in the code of 1857 because the legislature knew that without it the administrator would have no right of action in cases of trespass to real estate, and being omitted from the code of 1892 clearly manifests the intention

of the legislature to leave the matter as it stood at common law.

We would submit two propositions in conclusion, which we conceive to be fully established by the authorities, and insist that, if either one of them be true, the action of the lower court was error.

1. That the administrator exists solely to collect assets and pay debts; and that, while it is true that as long as debts remain unpaid there is a charge on the personalty, which makes the title of a distributee an equity, the value of which is measured by the amount of debts; yet when there are no debts and no administrator, the title of the distributee is as complete a legal title as it would be had the administrator distributed the estate and the distributee can maintain an action at law upon this title.

2. That the administrator had no right to bring a suit for trespass committed on real estate during the lifetime of his intestate, he having no control of the real estate and no power to touch it except to apply·for a decree to sell it to pay debts, on showing that the personalty is not sufficient.

*McWillie & Thompson,* for appellee.

1. Counsel for appellants are wholly in error in their opinion that a trespasser on lands was liable at common law to the heirs of a decedent who owned the lands when the trespass was ·committed. We find in Schouler's Exs. and Admns, sec. 279, that a right to recover for injury done to the freehold was, by the original common law, excluded by the death of the owner, and the author cites for this proposition, Williams on Exs., sec. 793; 1 Saund., 216, 217, and notes. The author, however, goes on to state that several English statutes were enacted changing the common law by opening a wider field to administrators who sought to recover damages for wrongs suffered during the life of their intestate, and modern American legislation has wholly changed the old common law. We are told by the same author, in sec. 284, that by the English statutes, 3 and 4

William IV, chap. 42, sec. 2, the right to sue for any injury to a decedent's real estate was given to the executor or administrator and that legislation in various parts of the United States upholds in ample terms the survival of actions to the personal representative, meaning the executors and administrators, for damages done to real as well as personal estates, and the author adds that such damages, when recovered by the personal representative, appear to belong fitly to the personal estate of the decedent, since the right of action and money compensations are in essence personal and not real property.

It is only by virtue of the statute, code 1892, § 1916, that causes of action for trespass to person or property survive the death of the injured party at all; they survive only to the administrator of an intestate decedent. The appellants have no case either at law or in equity.

Of course a cause of action for trespass to land does not run with the land. It is a distinct and separate property. It does not pass to the grantee in a deed conveying the land. *Blodgett* v. *Seales,* 78 Miss., 522. It does not follow the ownership of the land when conveved by deed, it does not follow it in case of descent. The cause of action is personal property and descends to the administrator, certainly it does so under the statute. code 1892, § 1916, surely gives the administrator the right to all causes of action which are enforced by personal actions. That an action for trespass to lands is a personal one cannot be disputed under the definition of actions. Anderson's Law Dictionary, title "Actions."

The counsel for appellants seem to think, and doubtless do think, that the omission of § 2079 of the code of 1880 from the code of 1892 is of great materiality in this case, but we differ with them and think that it is not a matter of any moment whatever. In the case of *Vicksburg, etc., R. R. Co.* v. *Phillips,* 64 Miss., 693, at page 703, this court, speaking through Campbell, J., says: "Section 2078 (code 1880) authorizes the prosecution by the personal representative of any personal action whatever

which the decedent might have commenced and prosecuted, and § 2079 (code 1880) specifically authorizes an action for any trespass done to the person or property, real or personal, of the decedent. The last named (meaning § 2079, code 1880) *may have been unnecessary,* but it cannot be held to limit the comprehensive language of § 2078 (code 1880). . . . . Section 2079 of the code of 1880 was evidently omitted from the code of 1892 for the reason that the omitted section is clearly embraced in § 2078 of the code of 1880, which is carried bodily into the code of 1892. All actions of trespass to persons or property are personal actions. Under § 2078 of the code of 1880 executors and administrators are given full power and authority to commence and prosecute *any personal action whatever* at law or in equity which the testator or intestate might have commenced and prosecuted. A personal action is brought for the specific recovery of chattels or other redress for breach of contract and other injuries of every description, the specific recovery of lands and tenants only excepted." Anderson's Law Dictionary, title "Actions," p. 27. A suit for damages to land is a personal action, purely a personal action, and nothing more. By § 1916 of the code of 1892, executors and administrators are given the right to prosecute any and all personal actions whatever, which the testator or intestate might have commenced and prosecuted. It makes no difference, therefore, if the common law be as contended by appellants' counsel. It makes no difference if, at common law, as contended by appellants, the heirs could have brought an action for damages to land, and that the administrator could not have brought it. Yet if such were the common law, our statute, code 1892, § 1916, has changed the common law and given the cause of action for trespass to land, as embraced in its terms, to the administrator or executor.

2. In the excellent brief filed by the appellants' attorneys they admit that there is no precedent in this state for a suit at law by heirs to recover on a cause of action which was owned

by their ancestor, and they have collected a number of equity cases from our own reports wherein an equitable title in the heirs has been respected and enforced in a court of chancery. On their own theory, the appellants have no case, unless the offer by them to show that Mrs. Conklin owed no debts at the time of her death requires a court of law to entertain the suit. One thing is certain; no man can affirm that any adult deceased person did not owe debts when he or she died, and thereby prove more than the affirmant's want of knowledge of debts.

In this very case, Mr. Conklin, the witness, in the nature of things, could not have proven more than that his deceased wife did not owe any debt when she died of which he had knowledge. The court will notice that if the suit was begun after the death of Mrs. Conklin, it was begun within a very short time thereafter. Our law for the administration of the estates of deceased persons proceeds upon the idea that at least one year's notice must be given to creditors after the grant of administration, so that they may come forward and probate their claims. In this case no publication whatever was made, and no steps whatever were taken to ascertain the fact whether Mrs. Conklin owed debts or not. We doubt seriously whether a court of chancery would grant relief to the heirs of the decedent on a cause of action which belonged to the ancestor, upon the mere allegation that the ancestor owed no debts and that there was no necessity for administration in so short a time after the death of the decedent as intervened in this case, and when courts of equity entertain such suits, they have ample power, if there be danger of the probable existence of debts, to make such decree as will protect the parties. A necessary averment in a bill of equity by heirs who seek to enforce their equitable title to a chose in action which they have acquired by inheritance is one to the effect that the decedent owed no debts, and that there is no necessity for an administration on his estate. This averment is traversible and the defendant can protect himself by traversing it and making the issue thus joined a subject of

proof. The equity court, upon consideration of the facts, has power to and should protect a defendant against whom it might render a decree in such case. It can require, as a condition of any relief granted, that the complainant shall indemnify the defendant from further liability on the same cause of action to an administrator or creditor. The circuit court has no such power, and, besides, there is no averment in the declaration that Mrs. Conklin did not owe debts when she died; whether she owed or did not owe debts was not presented by the pleadings, and, therefore, the evidence on that subject was properly excluded, but if the pleadings had presented the issue the circuit court was powerless to indemnify the defendant.

Certainly, however, heirs only become interested to the extent of an equitable title to a cause of action which existed in the ancestor before his death. The defendant's rights are involved in the question before the court, and the extent of these rights can easily be illustrated by the very case now before us. Let us suppose that the plaintiffs in this case had recovered a judgment against the railroad company for the trespass charged in the declaration, and that the railroad company paid the judgment, and suppose that there was really a creditor of the deceased Mrs. Conklin, who would take out letters of administration, or cause them to be taken out by some one else, and then institute a suit against the railroad company. What answer could be made by the railroad company in the way of pleading a former judgment against it? Most certainly a plea which would set up a judgment rendered on the record before the court would be demurrable. The recovery would certainly be held to have been by parties who did not have the right to sue, and the judgment would not preclude a subsequently appointed administrator from instituting and prosecuting his action for the identical trespass mentioned in the declaration.

The court will remember that it is the duty of a circuit court to dismiss suits of which it has no jurisdiction, or to transfer them to the chancery court, and that sec. 147 of our constitution

applies only to reversals (not affirmances) in this court. The circuit court of Warren county had jurisdiction of the case as presented by the pleadings. The declaration does not disclose that the plaintiffs were not the owners of the land when the trespass was committed. On the contrary, the declaration avers that the plaintiffs were, and still are, the owners of the land. The plea was not guilty. When the case came on to be tried, the evidence showed that plaintiffs did not own the land at the time of the trespass, but that the land then belonged to another party, to-wit, Mrs. Conklin; and the plaintiffs then sought to maintain their action by proving that they were the heirs of Mrs. Conklin, and to bolster this up with the opinion of a witness that at the time of her death she did not owe any debts. The court gave a peremptory instruction for the defendant. The peremptory instruction ought to have been given because the heirs of decedents cannot maintain actions at law, certainly not an action of trespass, on a right of action which accrued to their ancestor. See authorities hereinbefore cited. This conclusion cannot be resisted in this state by showing that there are certain exceptions to the general rule, and that a suit may be brought by heirs in an equity court. The weakness in the position of appellants lies in their misconception of the common law and failure to draw a distinction between a court of law and a court of equity, a distinction which is recognized in our jurisprudence. Nor will it avail them to cite authorities from states the courts of which have both common law and equity jurisdiction and enforce causes of action without reference to whether they be legal or equitable.

CALHOON, J., delivered the opinion of the court.

The heir could not, nor could the executor or administrator, under the common law, sue at law for damages done by trespass committed during the lifetime of the ancestor on the lands of the ancestor. Broom, Leg. Max., top page 911; Plowd., 142; 2 Saund. Pl. & Ev., 868; 2 Mod., 7; 1 Saund., 216, note 217,

---

---

note; Barb. Parties, 176; *Wilbur* v. *Gilmore,* 21 Pick., 252; *Reed* v. *Railroad Co.,* 18 Ill., 403. This, being the common law, is still the law, unless changed by statute. It has not, so far as concerns the heir, been changed in this state. Sections 1916, 1917, code 1892, simply give the right to sue to the executor or administrator. They do not give it to the heir. Hence he cannot sue. The case of *Marshall* v. *King,* 24 Miss., 85, decides that the distributee cannot recover at law. Equity courts may be invoked in certain states of case, but chancery powers, remedial and protective, are large—such as the requirement of bonds to indemnify, and to restore property to save harmless such persons as premature distribution might injure. Law courts cannot do this. The crucial test in the case before us is that, if recovery were had and the damages paid, and debts of the intestate did develop, the administrator could recover again.

*Affirmed.*