Civil action to recover the amount of certain notes secured by the defendant to the plaintiff for stock in the Bell-Richards Shoe Company. The defense is that at the time the stock was purchased and the notes given, plaintiff agreed with the defendant that he would accept four notes of the company in full payment and satisfaction of the notes so given for the stock, and that this agreement was afterwards carried out, and the debt, evidenced by the sixteen notes, thereby settled and discharged. The following synopsis of the evidence is taken from the record: Plaintiff and defendant were the majority stockholders in the Bell-Richards Shoe Company, a corporation, with places of business at Spartanburg, S.C., Chattanooga, Tenn., and Rocky Mount, N.C. On 6 August, 1907, they entered into a contract by which plaintiff sold and defendant bought the former's stock in said corporation, paying therefor $100 in cash and executing sixteen notes, one for $150 and fifteen for $250 each, and stipulating that he would assume all of the liabilities of Mr. Richards in the company. One of said notes was *Page 148 
payable every three months, commencing 6 November, 1907. Defendant was permitted to prove that, at the time of the sale and as part of the consideration, plaintiff agreed to take four notes of the (185) Bell-Richards Shoe Company in substitution for the other notes and in satisfaction of the same, as the stock was really bought for the benefit of the company. A few days after the defendant purchased the stock, he sold the Spartanburg store to the other stockholders of the corporation, leaving the corporation with places of business at Chattanooga and Rocky Mount. On October, 1907, the corporation was adjudged a bankrupt. On 7 November, 1907, the first note matured and was protested for nonpayment. The defendant delivered to plaintiff four $1,000 notes of the company, dated 29 April, 1907, and due one, two, three, and four years after date, respectively. The notes were retained by plaintiff and his attorneys for about two years, and were then returned to defendant. These four notes purport to be signed by the Bell Richards Shoe Company, a corporation then in bankruptcy, by the defendant as secretary and treasurer. The notes were payable to plaintiff, and bore date more than four months preceding the bankruptcy and more than six months preceding delivery. In January, 1908, the plaintiff filed a claim in bankruptcy against the Bell-Richards Shoe Company, basing it, not on the four $1,000 notes made by Hodges in December, 1907, but on the sixteen notes of 6 August, 1907, aggregating $3,900, which, in the proof of his claim, he alleged were given for the stock in the company. In the proof of claim appears the statement: "That the only security held by Charles S. Richards for said debt is the following: The signature of Sam T. Hodges to the notes above referred to, and the certificates of stock, amounting to $4,000, in the Bell-Richards Shoe Company, which have been deposited by the said Sam T. Hodges in the First National Bank of Hendersonville, N.C. and on which the said Charles S. Richards has a lien." The claim was afterwards withdrawn by plaintiff, and he received $98.52 on the capital stock sold to Hodges and deposited in the First National Bank of Hendersonville, as security for the notes sued on. This action is brought to recover $3,750, alleged to be due by defendant on the notes of 6 August, 1907, which were made by him to plaintiff in accordance with the contract entered into between them on that date. The defense is that (186) the sixteen notes of 6 August, 1907, were paid and satisfied by the four $1,000 notes of the corporation given to plaintiff.
Plaintiff duly objected to all evidence tending to change, vary, or contradict the original contract of the parties, which was in writing, and it being admitted, he excepted. The following verdict was returned by the jury: *Page 149 
1. Were the notes sued on given with the understanding and agreement that the notes of the Bell-Richards Shoe Company in the sum of $4,000 should be received and accepted by the plaintiff in the payment of the notes sued on? Answer: Yes.
2. Did the defendant deliver to the plaintiff notes of the Bell-Richards Shoe Company for $4,000 in pursuance of such agreement? Answer: Yes.
The judge charged the jury as follows:
"1. Were the notes sued on given with the understanding and agreement that the notes of the Bell-Richards Shoe Company, in the sum of $4,000, should be received and accepted by the plaintiff in payment of the notes sued on? That is a plain question of fact; the issue presents the clear-cut question of fact for you to determine from the evidence, and if you find therefrom and by the greater weight thereof, the burden being on the defendant Hodges to so satisfy you, that this was the agreement, that is, that he and the plaintiff Richards agreed and contracted, at the time the notes in suit were signed and delivered to Richards, that they should be paid off and discharged by the substitution of the notes of the Bell-Richards Shoe Company for $4,000, then you will answer the issue `Yes'; but if the defendant has not so satisfied you from the evidence and all the evidence and circumstances, you will answer the issue `No.'
"2. If you answer the first issue `Yes,' the second issue is, Did the defendant deliver to the plaintiff notes of the Bell-Richards Shoe Company for $4,000 in pursuance of such agreement? The burden of this issue is one the defendant to satisfy you that he had not only delivered the notes of $1,000 each to Richards, the plaintiff, but that he delivered them in pursuance of the contract made 6 August, (187) 1907, and not only that he delivered them, but that they were accepted by Richards in pursuance of the prior contract, and, if the defendant has so satisfied you, you will answer the second issue `Yes'; but if he has not so satisfied you, you will answer `No.'" He further charged that, while the four $1,000 notes would not be good against the creditors of the company, or its stockholders, or in the bankruptcy court, that was not the question, but the jury should simply inquire and find whether or not they were made, delivered, and accepted in execution of the prior contract of Richards with the defendant; but the jury were told that they might consider the nature of this transaction in passing upon the credibility of the defendant, who had testified in the case in his own behalf.
Judgment was entered upon the verdict, and plaintiff appealed. *Page 150 
After stating the case: The general rule is readily admitted, that a contract in writing, complete on its face, cannot be altered by parol evidence of inconsistent agreements previously or contemporaneously made, in the absence of fraud, accident, or mistake. The terms of a written contract cannot be varied or contradicted in such a way, but all such negotiations are conclusively presumed to have been merged into the final agreement, of which the writing is, in law, the only memorial. The difficulty arises always in the application of this rule and the determination in any given case of the question whether the proposed evidence does tend to vary or contradict it, or shows merely a collateral and independent agreement having no such tendency.
In recent years we have decided numerous cases with reference to the bearing and application of this rule to their special facts, and some in which were involved the consideration whether the terms of the instrument were essentially varied or contradicted, and the (188) obligations of parties under the contract thereby changed or modified. Cobb v. Clegg, 137 N.C. 153; Evans v. Freeman, 142 N.C. 61;Typewriter Co. v. Hardware Co., 143 N.C. 97; Medicine Co. v. Mizell,148 N.C. 384; Basnight v. Jobbing Co., 148 N.C. 350; Walker v.Venters, 148 N.C. 388; Woodson v. Beck, 151 N.C. 144; Pierce v.Cobb, 161 N.C. 300; Carson v. Insurance Co., ibid., 441; Ipock v.Gaskins, ibid., 673, and many others; but those cited, if carefully examined, will serve to illustrate the force and extent of the rule in its application to cases of varying phases.
We should give proper heed to the admonition of Justice Shepherd inMoffitt v. Maness, 102 N.C. 457, quoting the words of Judge Taylor inSmith v. Williams, 5 N.C. 46, and those of other eminent jurists, that the written memorial is far more trustworthy than oral statements of witnesses, "the sages of the law having said that the fallability of human memory weakens the effect of that testimony which the most upright mind and one fully impressed with the solemnity of an oath may be disposed to give to it." He counsels us that in some of the cases we have approached close to the verge of the law, and that there is great danger that we may pass beyond it. But we apprehend no such danger in this case, for the charge of the court may well be sustained, and safely, too, upon an unquestioned principle of the law.
There is no attempt here to vary or contradict the written agreement, but only to show that the plaintiff has accepted the new notes in full payment and satisfaction of the original ones. If the original parol *Page 151 
stipulation, that they should be thus received as a discharge of the first obligation, changes the contract as evidenced by the writing, that is, the sixteen notes, which we need not decide, Richards afterwards took the new ones, kept them, proved them in bankruptcy, and, as the jury found under the evidence and the verdict as interpreted by the charge, he so received them in substitution for the other notes as a satisfaction thereof. In this view, it can make no difference whether the oral stipulation was made contemporaneously with or subsequently to the date of the original notes, as he afterwards voluntarily submitted to a performance of it by accepting the new notes. It then became an executed (189) contract. The previous agreement to accept the notes of the company in substitution for or as a satisfaction of the defendant's notes in other words, to explain his act of receiving them.
The case of Rugland v. Thompson, 51 N.W. Rep. (Minn.), 604, seems to be exactly in point. It appeared there that the payee and was, at least, competent to show that they were delivered to plaintiff and retained by him for that purpose, that is, to satisfy the others, or, holder of a promissory note had accepted from the maker certain personal property and services, and it was held admissible to prove an oral agreement when the note was made, that whatever should be thus supplied to the payee should be applied in payment on the note; such evidence being admissible, not to vary the agreement expressed in the note, but only as bearing upon and characterizing the subsequent delivery and acceptance of the property and services. And so is the case ofBuchanon v. Adams, 49 N.J. L., 636 (60 Am. Rep., 666), where the defendant proposed to prove that the plaintiff had orally agreed with the defendant, at the time of giving the note in suit, that he would receive lumber in payment of it, and that it would not be negotiated. The Court decided that whole this evidence, by itself, was incompetent, as we held in Walker v. Venters, supra, yet "that the testimony offered, when supplemented by proof that such agreement was executed, on the part of the defendants, by the delivery of more than sufficient lumber to pay the note, was admitted for the purpose of showing that the lumber was in fact received in payment and satisfaction of the note, and not for the purpose of varying the terms of the written promise to pay. The rule is well settled that evidence of contemporaneous declarations is inadmissible to vary the terms of a written contract," citing several cases in support of the ruling. See, also, Bank v. Osborne, 81 Minn. 276;Braly v. Henry, 71 Cal. 481; Honeycut v. Strother, 2 Ala. 135. The last three cases go even beyond the necessities of our case. Reference is also directed to a number of cases of a like tenor, to be found in a valuable note to Woodson v. Beck, supra, as reported in 31 L.R.A. (N.S.), 235. (190) *Page 152 
The Court, in Middleton v. Griffith, 57 N.J. L., 442, after referring to the case just cited, Buchanon v. Adams, said: "It was held in Chaddockv. Van Ness, 6 Vroom, 517, that parol evidence of a contemporaneous agreement between the parties as to the mode of payment, which has been executed in satisfaction of the debt, is admissible in an action by the payee against the maker. The principle upon which such evidence is admissible in an action by the payee is that it goes to establish the fact of payment or satisfaction. Oliver v. Phelps, 1 Zab., 597, 603. If this offer of evidence in this case was to establish a contemporaneous agreement as to its mode or manner of payment between the plaintiff and defendant, and which had been executed in satisfaction of the note or debt secured thereby, then it was admissible to defeat the action; but in order to be admissible, the offer must tend to show this result."
Parol evidence will not be received for the purpose of engrafting upon a promissory note, which appears upon its face to call for the payment of a definite sum of money at a specified time, absolutely and unconditionally, a promise which contradicts its terms and subverts its legal effect; but in Zimmerman v. Adee, 126 Ind. 15, the Court, while fully recognizing and adopting that principle, held, upon a state of facts like ours, "that the rule which precluded proof of prior or contemporaneous agreements did not prevent proof of an executed agreement made at the time of the making of a note to the effect that the instrument should be surrendered upon the performance of certain conditions, which had been fully performed. Where the object of parol evidence is to show that a note has actually been satisfied in some other way than by the payment of money, it is perfectly competent for the maker to prove that contemporaneously with the making of the note it had been agreed that a note has actually been satisfied in some other way than by the payment of money, it is perfectly competent for the maker to prove that contemporaneously with the making of the note it had it had been agreed that it might be paid or satisfied by delivering another note, and that the other note had actually been delivered in pursuance of the agreement," citing Hagood v. Swords, 2 Bailey, 305; Crosman v. Fuller, 17 Pick., 171; Low v. Treadwell, 12 Me. 441; Bradley v. Bemtly, 8 Vt. 243; Buchanon v. Adams, 9 Cent. Rep., 120. Citations to this (191) point might easily be multiplied indefinitely, but we will content ourselves with a reference to only a few of them. Sutton v.Gabriel, 118 Iowa 78; Howard v. Stratton, 64 Cal. 487; Tucker v.Tucker, 113 Ind. 272, where the Court held: "This rule (of exclusion) does not, however, prevent the maker of a promissory note from alleging and proving an executed agreement, made at the time of the execution of the note, that it should be delivered up upon the performance of certain conditions by the maker. The effect of averments and proof of that nature is not to vary, contradict, or add to the note, but to show *Page 153 
that, according to the terms of a collateral agreement, made at the time, and since fully executed, the note has been paid and satisfied." See, also, an elaborate note to Gas Co. v. Wood, 43 L.R.A. (O. S.), at page 483, where many cases to the like effect are collected, especial attention being called to Juilliard v. Chaffee, 92 N.Y. 529, and Patrick v. Petty,83 Ala. 420.
We may consider it as settled by the authorities that where the collateral agreement, though in parol, has actually been performed, or passed from the executory to the executed stage in the negotiations between the parties, it is competent to show the oral agreement, not for the purpose of varying or contradicting the writing, but to explain and characterize that part of the transaction by which the collateral agreement was executed; and, too, apart from the prior oral agreement, it would be competent to show, independently, as an isolated fact, for what purpose the subsequent notes were given by defendant and received by the plaintiff, as it does not alter any written contract. The parties can voluntarily stipulate as to the method of performing their contract (Typewriter Co. v.Hardware Co., 143 N.C. 97), and it is binding upon them, at least, when the agreement is executed, as much so as if the original contract had been performed identically as stated therein, the new method being substituted for the old.
It does not appear clearly in the record at what time the new notes were actually delivered. When an oral contract of this kind is made with respect to performance of the written contract, the creditor who accepts one set of notes in satisfaction of the other and (192) prior one cannot object that the new notes turned out to be uncollectible. On this point the law is thus stated in 2 Greenleaf on Ev. (14 Ed.), sec. 523: "Proof of the acceptance of the promissory note or bill of a third person will also support the defense of payment. But here it must appear to have been the voluntary act and choice of the creditor, and not a measure forced upon him by necessity, where nothing else could be obtained. Thus, where the creditor received the note of a stranger who owed his debtor, the note being made payable to the agent of the creditor, it was held a good payment, though the promisor afterwards failed. So, where one entitled to receive cash receives instead thereof notes or bills against a third person, it is payment, though the securities turn out to be of no value," citing in support of the textWiseman v. Lyman, 7 Mass. 286, and other cases.
There was no fraud or suppression of the facts, and no necessity forced upon the plaintiff to take the new notes, and certainly no duress. It was his free and voluntary act, with full knowledge of all the circumstances. Taking an abstractly equitable view of the matter, he has lost *Page 154 
nothing, really; as, if he had kept the stock, it would have been practically worthless; and the defendant conversely acquired nothing of value by the purchase. Under the circumstances, if we required defendant to pay the original notes, when plaintiff agreed to take the company's notes in satisfaction of them, it would not be just from a moral standpoint, even if, in strictness, it is the correct legal aspect of the case. But we consider the case only as it is affected by the law, and not by any moral question involved.
There were no requests for special instructions, presenting any other feature of the case, and under the charge and the evidence the jury have found that plaintiff actually received the notes of the company in performance of his prior contract, and this makes a complete defense to his recovery upon the sixteen notes, there being ample evidence to sustain the charge.
No error.
Cited: Buie v. Kennedy, post, 299.
(193)