## LOVELAND et al. v. INGLE.   (No. 6562.)

(Court of Civil Appeals of Texas. San Antonio. May 11, 1921. Rehearing ing Denied June 1, 1921.)

**Husband and wife** &⟶25(3)—**Notice to husband as to lack of consideration of note purchased by wife imputable to her.**

As respects claim of innocent purchase by a wife of notes given for a worthless "trade extension campaign plan" by a merchant, the knowledge of her husband, the leading member of the company which promoted the plan and which was the payee of the notes, was her knowledge; the notes being transferred to her by him after maturity.

Appeal from Johnson County Court; O. O. Chrisman, Judge.

Action by F. M. Loveland and another against J. A. Ingle. From judgment for defendant, plaintiffs appeal. Affirmed.

J. M. Moore, of Cleburne, for appellants.
J. O. Lockett, of Cleburne, for appellee.

FLY, C. J. This is a suit on five promissory notes, four in the sum of $60 each and the fifth for $40, amounting in the aggregate to $280, instituted by appellants against appellee. F. M. Loveland is a married woman, joined pro forma by her husband, T. O. Loveland. Appellee sought to avoid liability on the notes, which he executed to the Brenard Manufacturing Company, by pleas of failure of consideration and fraud on the part of the payee of the notes. Appellants claimed to be innocent purchasers for value of the notes, before maturity and without notice. The trial was before the court, without a jury, and resulted in favor of appellee.

The evidence shows that appellee was engaged in the banking and general hardware, tinware, and grocery business in Grandview, Johnson county, and that on June 18, 1915, A. B. McBride, agent of the Brenard Manufacturing Company, composed of T. O. Loveland and J. L. Records, represented to appellee that his company would, through what was known as the Trade Extension Campaign plan, organize the buying and consuming public of that territory into clubs, which would be great "trade getters" and cause a great influx of buyers to the storehouse of appellee. In connection with the organization scheme, the company was to furnish certain silverware and watches and a grafonola, which were to be given away as premiums to create interest in the advertising scheme. By means of this plan the buying public were to be enticed to the store of appellee and great and remunerative sales would result. The staid banker, solid hardware and tin man, and grocery merchant "fell" for the brilliant plan to clear his stores of the accumulated goods and merchandise, and fill the safes in his bank with gold and silver, and executed six notes amounting in the aggregate to $340, to furnish the sinews of war for the company, that was to make its promises a reality. The plan was only a dream, and nothing materialized for appellee except the grafonola, watches, and silverware. There was no organization of clubs, there was no rush of trade, and appellee's coffers were not filled with the money of the people. Only a portion of the silverware and watches and the grafonola could be unloaded by appellee on a confiding public, and the articles were of less value than $60, which amount was paid to appellant by appellee. The whole scheme "melted into air, into thin air," and left not a trace behind, except the notes on which this suit is based.

Appellants claimed that the notes were purchased by Mrs. Loveland and were her separate property, but the evidence showed that they were community property and were purchased by her husband, T. O. Loveland, with community funds from a company, of which he was the leading member. Even if

the husband made the purchase as the agent of the wife, his knowledge was her knowledge, and Mrs. Loveland under no phase of the evidence could have been an innocent purchaser. Her husband was fully cognizant of the misrepresentations made to appellee, for his company made them, and he was a party to the fraud perpetrated on appellee and he knew that the whole scheme was a baseless device and could result in no material good to the party on whom it was imposed. It is a legitimate inference that the assignment of the notes to the wife of the leading partner in the company was made to prevent the anticipated defenses. Mrs. Loveland swore that she knew nothing about the purchase of the notes and did not even sign the check for the money with which they were purchased. He signed all papers for her. She was a mere figurehead, T. O. Loveland being the real party. She had no separate property in reality, although she claimed her husband gave her $20,000 at some indeterminate time described as "a number of years ago," and he exercised absolute control over it. The notes were transferred to Mrs. Loveland, after maturity, by her husband, who had full knowledge of the fraud and want of consideration when he bought the notes. The conclusions of facts of the trial judge are sustained by the statement of facts.

The judgment is affirmed.