[Civil No. 2551.   Filed October 10, 1927.]

[259 Pac. 881.]

A. T. HAMMONS, Superintendent of Banks for the State of Arizona and Receiver of the MAYER STATE BANK, a Corporation Insolvent, Appellant, v. J. E. O'BRIEN, Appellee.

Messrs. Norris, Norris & Flynn, for Appellant.

Mr. J. E. Russell, for Appellee.

ROSS, C. J.—This suit was brought by the superintendent of banks, as receiver of the Mayer State Bank, to collect from J. E. O'Brien five promissory notes, taken over by the superintendent as part of the assets of such bank. The notes were in regular form, signed by O'Brien, and payable to the Mayer State Bank. The defense, as set out in the answer to the complaint, was:

"That defendant did not, for himself or for his own use or benefit, receive any consideration whatsoever for the said promissory notes or any of them; that all of the moneys represented by said promissory notes were moneys advanced for the use and benefit of Charles Batre, president of the Mayer State Bank, and corporations he was then promoting; that said moneys were all used for purposes of Charles Batre and under his directions; that at the time said moneys were advanced defendant, for the purpose of providing a memorandum and receipt for the cashier of the Mayer State Bank, signed the several notes in question; that at said time it was distinctly understood and agreed by and between the said Mayer State Bank, acting through its president, Charles Batre, that defendant was not to pay said notes, or the sums represented thereby, or any part of the same, and that the notes executed were mere receipts or memorandums for money advanced for and on account of the president of said bank, Charles Batre, and not otherwise; that defendant has not paid anything on account of said notes, principal or interest, or otherwise, and did not owe and does not owe anything thereon."

The case was tried to a jury, which returned a verdict in defendant's favor, upon which judgment was entered. The receiver has appealed, and in his assignments he alleges errors in the court's refusal to instruct a verdict in his favor at the close of his case, and also at the close of defendant's case, upon the grounds that the evidence showed defendant had executed and delivered said notes to the bank, and that the consideration therefor was a valuable one; also upon the ground that the verdict and judgment are not supported by the evidence, in that it appears from the evidence that the notes were executed and delivered to the bank for a valid and valuable consideration. Complaint is also made of the court's instruction advising the jury that, if defendant did not himself receive a consideration, he was not liable thereon.

The evidence submitted by the defendant in support of his defense was substantially as follows: One Charles Batre was the president of the Mayer State Bank, and R. C. Walters was the cashier, in the active and immediate charge of its affairs. At the time, the Morgan Gold & Silver Mining Company, of which Batre was president and the principal stockholder, was engaged in doing some mining development in the neighborhood of the bank, which development was being superintended by defendant O'Brien. Batre told O'Brien that he had plenty of money in the bank, and, when he (O'Brien) needed money to take care of the pay-roll at the mine, to make out his notes and present them to the cashier of the Mayer State Bank, and the bank would advance the money thereon to take care of the pay-roll, and assured O'Brien he would not have to pay notes. The notes sued on were signed by O'Brien in blank, and the cashier filled them out as to amount, interest, etc., and placed the money either to the credit of the mining company or O'Brien, but which

the evidence does not show. The money was checked out by O'Brien to meet the expenses of the mining operations. O'Brien says it was all used for that purpose. Walters, the cashier, testified O'Brien told him he wanted some of the money represented by one of the notes to apply on the purchase price of a home O'Brien had bought. This O'Brien disputes.

There was some contention that O'Brien was interested in the mining operations other than as a wage-earner. This is predicated upon his admission that he had been promised by Batre some stock in the company, and also that he would be made an officer thereof, neither of which events came to pass. On three of the notes one year's interest had been paid, and on one two years' interest had been paid. This interest was not paid by O'Brien, but by some-one else, whose identity was not disclosed by the evidence.

Embodied in plaintiff's assignments is the conten-tion that defendant need not have received any con-sideration for the notes sued on, provided the Mayer State Bank advanced the money for them to some third person—in this case, Batre. In support of this proposition plaintiff quotes from *Doxy* v. *Exchange Bank of Perry*, 19 Okl. 183, 92 Pac. 150, the statement that:

"A detriment suffered by the payee of a note at the instance of the maker thereof . . . will be suffi-cient consideration to support the note, even though the maker thereof received no personal benefit by reason of the execution and delivery thereof."

There can be no criticism of this principle. It is but just and right that one who induces another to part with his good money, by giving to the latter his written promise to pay it back, should be re-quired to keep the promise, even though he did not receive the consideration. But that is not the case here. The evidence establishes the fact that the bank

did not pay its money out at the "instance" or upon the inducement of O'Brien; it was paid out at the request of Batre, the president of the bank, and for the use and benefit of himself. Defendant asked for and received no definite loan, but signed notes in blank, and then they were filled out by the cashier to cover the amount of advancement necessary to care for the pay-roll of the mining company.

Paragraph 4159 of the Negotiable Instruments Law (Civil Code 1913) expressly provides that the person to whom a blank paper is delivered, for the purpose of converting it into a negotiable instrument may supply the deficiencies as agreed upon. But paragraph 4161, Id., provides that:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto," and between the parties "the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument."

We think the evidence fully sustains the answer of defendant wherein he alleges:

"That the notes executed [by him] were made receipts or memorandums for money advanced for and on account of the president of said bank, Charles Batre, and not otherwise."

That they were made for "a special purpose, and not for the purpose of transferring the property in the instrument," is amply supported by the evidence, and that such an understanding may be shown, and is a good defense, as between the parties to the instrument, is well settled. *Storey* v. *Storey* (C. C. A.), 214 Fed. 973.

The transaction, in its final analysis, was the extension of a credit by the bank to Batre by way of an overdraft, using the notes of O'Brien as memoranda or receipts therefor. It was so understood

and treated by the cashier of the bank, as also by Batre, and it is certain that O'Brien labored under the belief that he would not be asked to pay the notes. Whatever may be said of Batre's intentions in procuring the money from the bank in the manner he did, there can be no claim that the cashier was not acting within his authority, or that O'Brien was a party to any wrong, precluding him from showing the real facts of the transaction. The facts do not bring this case within the rule recently announced by the court in *Fischer* v. *Hammons* (No. 2596), *ante,* p. 423, 259 Pac. 676, for in that case there was an unconditional delivery of the note by the maker.

The instructions given by the court, wherein the jury were told that if the defendant did not himself receive a consideration for executing and delivering the notes he was not liable, as a general proposition are erroneous, and should not have been given in that form. As we have seen, the consideration need not necessarily be paid to the maker of a note to bind him. We do not think, however, the instructions could have prejudiced the plaintiff, since it appears from the evidence that the notes were such only in form, but in fact memoranda or receipts for money loaned by the bank on the credit of Batre.

The testimony on the question as to whether O'Brien used any of this money for his own purposes, or whether it was all used for the Morgan Gold & Silver Mining Company, was in conflict, and the issue was determined by the jury against the contention of the plaintiff.

The fact that defendant had been promised by Batre a gift of some stock in the mining company, or to be made an officer thereof, can hardly be regarded as a consideration for the signing of notes, especially in the face of the evidence to the effect that they were signed as memoranda evidencing loans

made to Batre, and were never intended as an obligation of defendant.

After a careful examination of the evidence and the law applicable thereto, we are of the opinion that no prejudicial error was committed by the lower court, and the judgment is therefore affirmed.

LOCKWOOD and McALISTER, JJ., concur.