Argued February 16; affirmed March 2, 1937

# ROBINSON *v.* LINN ET AL.

(65 P. (2d) 669)

Department 2.

*Keith A. Caldwell,* of Portland, for appellant.

*A. L. Veazie,* of Portland (Veazie & Veazie, of Portland, on the brief), for respondents.

BEAN, C. J. This is an action upon a promissory note dated January 17, 1930, for the sum of $2,000, with interest at the rate of 7 per cent per annum, due on or before March 1, 1930, in favor of E. G. Robinson. The note is in the usual form, signed by the Pacific Coast Linen Mills, by Fletcher Linn, treasurer, and A. T. Allen, assistant secretary, and indorsed on the back, as guarantors, by defendants Fletcher Linn, James G. Walker, Jr., and J. P. Rasmussen. The note was indorsed by E. G. Robinson to Frances G. Robinson, the wife of E. G. Robinson, on October 15, 1932. The cause was tried by the court

without the intervention of a jury and findings of fact were made and judgment rendered in favor of defendants. Plaintiff appeals.

The testimony tended to show, and the trial court found, in substance, as follows: That on November 29, 1929, E. G. Robinson, husband of plaintiff and payee in the note, agreed with the Pacific Coast Linen Mills, a corporation, that it should elect him president and general manager at a salary of $350 per month, half of which should be payable in stock and half in cash, in consideration of which he should subscribe for $5,000 of the company's preferred stock to be paid for when he should collect his money on certain notes of the Portland Electric Power Company held by him and soon to fall due, and on the further condition that he should receive from the company one hundred shares of its common stock and from the defendant Linn fifty shares additional of the common stock, which conditions the company and Linn agreed to and performed. Pursuant to such arrangement E. G. Robinson was elected president and manager of the corporation on December 9, 1929. On January 17, 1930, E. G. Robinson stated to the defendants and indorsers that the Pacific Coast Linen Mills was urgently in need of money to meet its pay roll. He further stated to them that a payment would fall due to him in the near future on one of the notes of the Portland Electric Power Company, which he was under agreement to apply on his stock subscription, and he proposed to the defendants, named as guarantors in the note, whom we will hereafter call the defendants, and to the corporation, that if the Pacific Coast Linen Mills would sign a note in the form set forth in the complaint and the defendants would sign

a guaranty thereon in the form set forth in the complaint, he would use the same to raise immediately thereon from a friend of his the sum of $2,000 for the use of the corporation, and that at or before the maturity of the note, Robinson would collect from the Portland Electric Power Company the sum of $2,000, and therewith take up said note from the holder and discharge the same as a payment on his indebtedness to the Pacific Coast Linen Mills of $5,000 for his agreed subscription to its capital stock. The Pacific Coast Linen Mills and defendants herein relied upon said representations and promises of E. G. Robinson and acceded to his proposal. Pursuant to said agreement and understanding, and for said particular purpose and no other, the form of promissory note and the form of guaranty set forth in the complaint were signed and delivered respectively by the Pacific Coast Linen Mills and by the defendants and were received and accepted by E. G. Robinson. Mr. Robinson did not use the note and guaranty for the special purpose for which they were delivered, but instead thereof he raised the amount of $2,000 by obtaining a loan on January 18, 1930, from the Hibernia Commercial and Savings Bank by giving his own note therefor and pledging to the bank the promissory note of the Portland Electric Power Company for the amount of $2,500, principal, maturing on March 1, 1930, same being one of the notes from the proceeds of which he had promised and agreed to make payments on his stock subscription, and being the particular note about to fall due, to which he had referred in his negotiations with the defendants. On January 18, 1930, E. G. Robinson deposited to the account of the Pacific Coast Linen Mills in said bank the sum of $2,000, and he was thereupon credited on the books of the company

with that sum. On March 1, 1930, E. G. Robinson collected from the Portland Electric Power Company on the note the full amount of principal and interest due thereon and with said funds he discharged his loan obtained from the Hibernia Commercial and Savings Bank. At this time he was president and general manager of the Pacific Coast Linen Mills and all of its business affairs were being conducted under his general supervision. In view of the special purpose for which the note and guaranty had been signed and his agreement in respect thereto, as stated, it was his duty in good faith to the Pacific Coast Linen Mills and defendants herein, when he received the payment from the Portland Electric Power Company to cancel and retire the note and guaranty, but instead of doing so he has wrongfully retained possession thereof and transferred the same long after maturity to his wife, the plaintiff herein. On January 18, 1930, when E. G. Robinson was given credit on the books of the Pacific Coast Linen Mills for said $2,000, he was indebted to the corporation on account of his agreement to subscribe for $5,000 of its stock. A payment of $2,000 fell due on his stock subscription when he received payment of his promissory note from the Portland Electric Power Company on March 1, 1930. In 1930 the Pacific Coast Linen Mills, with the knowledge and acquiescence of E. G. Robinson, charged him on its books with the amount of his stock subscription of $5,000, and thereby the amount of $2,000 was applied on his stock subscription and the note was paid in full.

It is contended by E. G. Robinson, on behalf of the plaintiff, that the $2,000, the principal amount of the note sued on, was a "straight out and out loan" to the company. The testimony on behalf of defendants is strictly to the contrary.

■ It perhaps should be mentioned that the findings of fact made by the trial court, under the statute, have the same force and effect as the verdict of the jury; hence the court is not concerned with a conflict in the testimony. Unquestionably the testimony tended to show that E. G. Robinson promised to subscribe for $5,000 of the stock of the company, and it was understood and agreed that the $2,000 should be in part payment for the subscription of stock.

Upon receiving one hundred shares of the capital stock from Fletcher Linn, pursuant to the agreement, E. G. Robinson executed the following receipt:

"February 25, 1930. Received of Fletcher Linn one hundred shares of common stock of Pacific Coast Linen Mills, which is to be held by me and voted at stockholders' meetings and is to become mine only on payment of my subscription for $5,000. E. G. Robinson."

A letter signed by E. G. Robinson, dated January 2, 1930, addressed to the company, which shows a part of the transaction, reads as follows:

"After my systematic and analytical study of the industry in Europe, and after making a thorough investigation of your plant at Vancouver, Washington, and discussing with your officers your program for the future, I am greatly pleased to invest my capital and became President and Official Head of your Company."

■ Plaintiff assigns that the court erred in permitting the defendants to prove the contract in regard to purchase of stock and the arrangement in regard to obtaining $2,000 for the company in part payment of the stock, contending that it is varying and contra-

dicting the terms of the promissory note. The testimony tended to show, in effect, that the agreement between the parties was that the $2,000 obtained by the note should be applied in part payment for the stock subscription by E. G. Robinson and that said $2,000 was so obtained, and when the money was received by Robinson from the Portland Electric Power Company and the transaction was perfected, the note was thereby satisfied and paid. We see no infringement of the rule in regard to contradicting the terms of a written instrument. The defendants, as the testimony indicated and the court in substance found, were accommodation parties and signed the note as endorsers, without receiving value therefor and for the purpose of lending their names to E. G. Robinson. See section 57-206, Oregon Code 1930.

E. G. Robinson contends on behalf of the plaintiff that he was to pay for the $5,000 in stock with his salary of $350 per month. This contention was not upheld by the testimony and was not so found by the court. On behalf of defendants the testimony tended to show and the court in effect so found, that the plaintiff was to take half of his salary in stock, other than the subscription of $5,000.

Section 57-116, Oregon Code 1930, provides as follows:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting, or indorsing, as the case may be, and in such

case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument; * * * ''

Under this section it was competent for the defendants to show, if such was the fact, that the delivery of the instrument was for a special purpose only, that is, for the purpose of loaning the credit of the endorsers or so-called guarantors to E. G. Robinson for the purpose of obtaining an advance of $2,000 to accelerate, as it were, the receipt of the money, which he expected to obtain from the Portland Electric Power Company, and not for the purpose of transferring the property in the instrument to the payee therein named. According to the very nature of negotiable instruments, no condition annexed to the delivery, or special purpose for which the note is delivered, can be inserted in the note itself without destroying its usefulness. It is therefore competent to prove such condition or special purpose by parol evidence: 5 Wigmore on Evidence (2d Ed.) Sections 2443, et seq.; *First Nat. Bank v. Campbell,* 39 Idaho 736 (230 P. 43); *Monroe v. Parker,* 122 Neb. 499 (240 N. W. 548); *Gobles Co-op. Ass'n v. Albright,* 248 Mich. 68 (226 N. W. 876); *Anderson v. Rheney,* 152 Ga. 418 (110 S. E. 164); *Schlamp v. Manewal,* 196 Mo. App. 114 (190 S. W. 658).

Where the condition so annexed to the note or the special purpose for which it is given be that the same shall be used only as collateral or otherwise to raise money thereon, and it is not so used, but is diverted to another purpose, it is not enforceable by the payee against the party with whom such stipulation has been made: *Brooklyn Nat. Bank v. Reinitz,* 248 App.

Div. 599 (287 N. Y. S. 927); *Rheney v. Anderson,* supra; *Senft v. Schaefler,* 142 N. Y. S. 380, 81 Mis. Rep. 152; *Grisim v. Livestock State Bank,* 167 Minn. 93 (208 N. W. 805).

The fact that the defendants became parties to the note for the accommodation of the payee, E. G. Robinson, and they themselves received no consideration therefor, may be shown by parol evidence: *Federal Savings & Trust Co. v. Davis,* 104 W. Va. 235 (139 S. E. 703); *Breitengross v. Farr,* 100 Wis. 215 (75 N. W. 893); *Luikart v. Meierjurgen,* 124 Neb. 816 (248 N. W. 379); *First Nat. Bank v. Freeman,* 83 W. Va. 477 (98 S. E. 558). In 1 Daniel on Negotiable Instruments (7th Ed.) Section 90, the author says:

"In an action by the original payee of a negotiable instrument, or by one having notice, the question of consideration may be inquired into. And so parol evidence may be received, as against such original party or one having notice, to show a want of consideration, or failure of consideration, * * *.

"And parol evidence is admissible to show that the maker of a promissory note executed it for the accommodation and at the request of the payee and was not to be held personally responsible on the note by the payee; this shows want of consideration between the parties. And such evidence is also admissible to show which is the accommodated party."

■ The testimony tended to show that the note in question was executed by the defendants for the accommodation of E. G. Robinson, and that the defendants received no consideration therefor. Neither E. G. Robinson nor his assignee, with notice, who was the transferee to whom the note was transferred after the due date, can enforce the note against such accommodation parties: Section 57-205, Oregon Code

1930; 8 C. J. 259, Section 409; *Cox v. Heagy,* 184 S. W. 495; *State Banking Board v. James,* 264 S. W. 145; *Bennington State Bank v. Petersen,* 114 Neb. 420 (207 N. W. 673); *Rice v. Rice,* 101 Kans. 20 (165 P. 799).

■ Where a promissory note is made or signed by any party thereto for a special purpose or as an accommodation to the payee and the payee promises at the time of the signing of the note and as an inducement thereto that he will save any party joining in the execution of the paper, as an accommodation party, or for such special purpose, harmless from liability thereon, or that he shall not be called upon to pay it to the payee, such promise is a valid defense to the note, and it goes to the consideration of the note and may be established by parol evidence: *Vincent v. Russell,* 101 Or. 672 (201 P. 433, 20 A. L. R. 417); *Gandy v. Weckerly,* 220 Pa. 285 (69 Atl. 858, 18 L. R. A. (N. S.) 434, 123 Am. St. Rep. 691); *McAdam v. Wholesale Dry Cleaning & Dyeing Wks.,* 232 App. Div. 30 (248 N. Y. S. 613); *Higgins v. Ridgway,* 153 N. Y. 130 (47 N. E. 32). In *Vincent v. Russell,* supra, the court said:

"The rule sanctioned by a practically uniform line of authorities is that parol evidence is admissible to show that a negotiable note, absolute in form, although manually delivered to the payee, was not to become a binding obligation except upon the happening of a certain further event, since such evidence does not vary or alter the instrument, but tends merely to show that it never became a valid undertaking. Especially is this [the] rule if such event or contingency affects the consideration of the note."

The true relationship of the parties to a promissory note may be shown by parol as against a holder who is not in the position of a bona fide holder in

due course: *Hoffman v. Habighorst,* 38 Or. 261 (63 P. 610, 53 L. R. A. 908); *Hughes v. Pratt,* 37 Or. 45 (60 P. 707); *Macomber v. Goldthwaite,* 22 F. (2d) 638.

██ Under the agreement between the defendants and Robinson, pursuant to which they executed a guaranty or indorsement, the defendants were entitled to have the credit for the $2,000 advanced, offset against Robinson's stock subscription, and he cannot revive the debt after it has been so applied on the books with his acquiescence: *Williams v. Culver,* 30 Or. 375 (48 P. 365); *Casner v. Hoskins,* 64 Or. 254 (128 P. 841, 130 P. 55).

The defense made by the defendants, amounting to a plea of payment, which the testimony tended to support, is ample in itself to defeat the recovery by plaintiff, independently of the other defenses to the note. The evidence abundantly sustains the finding of the lower court.

Finding no error in the record, the judgment of the lower court is affirmed.

BAILEY, RAND and CAMPBELL, JJ., concur.