## WRIGHT v. KROUSKOP

(No. 2177; December 17, 1940; 108 Pac. (2d) 262)

For the defendant and appellant, there was a brief and oral argument by *Edward T. Lazear* and *James O. Wilson* of Cheyenne.

For the plaintiff and respondent there was a brief *by Carleton A. Lathrop* of Cheyenne, Wyoming, and *Stanford W. Gregory* of Denver, Colorado, and oral argument by *Mr. Lathrop.*

RINER, Chief Justice.

This cause comes to us as a direct appeal from a judgment of the district court of Laramie County. The facts are not particularly complicated and may be stated as follows:

Ruth Wright, plaintiff below and respondent here, on December 1, 1939, brought an action in the aforesaid court, in the usual form, to recover from Donald H. Krouskop, as the defendant and the appellant in this court, the sum of $500.00 on a promissory note reading:

"$500.00          Denver, Colo., June 10th, 1935.
On demand after date I promise to pay to the order of R. Wilner Wright Five Hundred and no/100 Dollars at the Denver National Bank of Denver, with interest at 8th per cent. annum from date until paid.

Presentment for payment and notice of non-payment are each hereby expressly and severally waived by the maker, or makers, and all indorsers hereof; and in case payment of this note shall not be made at maturity, it is agreed by said parties that all costs of collection will be paid in addition, and may be recovered as part hereof.
Value Received          (Signed)   D. H. Krouskop"
No........... Due............

The payee, R. Wilner Wright, according to plaintiff's testimony, wrote his name on the back of this instrument below the words "Pay to Ruth Wright or order." Plaintiff's petition states that the payee of said note "duly assigned and endorsed" said note to plaintiff, and the latter's testimony on the trial of the case in

the district court aforesaid, sitting without a jury, stated that said instrument "was negotiated" to her in July of 1936, the exact date thereof she was unable to give. The plaintiff also testified that the "note calls for eight per cent interest." At the time said petition was filed the plaintiff instituted attachment proceedings, upon which the sheriff of Laramie County took into his possession "one 1938 Hudson Sedan Model 83." The plaintiff further testified that interest on said note was not sought in said action "because an attachment cannot be brought for a sum of over $500.00" and on advice of counsel; that she loaned her "husband money to get that note"; that "we had a joint savings account and I worked and the money was mine"; that "the original $500.00" was her money; that no additional money was paid in July, 1936, when the note was turned over to her; that her husband gave the money to the defendant to put in the restaurant and filling station business known as the "Range View Filling Station"; that "at least $300.00 of the note" was hers; that part of the money was hers and part was her husband's; that her husband told her the money "was to be used to put into the business, but whether it was a partnership or not I did not know at that time"; that the money belonging to her and her husband being in a joint account he could check it out; that her husband wanted to know if he could use the money and she assented "because I figured we would get it back"; that she knew where the filling station was and went there occasionally with her husband; that there was $700.00 altogether "that was put in" and that "with this note" she "figured it was a loan," and that a demand for payment of the note was made by her husband for her "after it was endorsed to" her.

Defendant's defense to the action was threefold, his answer's first two defenses being no consideration for the execution of the note and that the consideration

therefor failed. His third defense was in substance this: That on June 10, 1935, and prior thereto, the defendant was engaged in the service station and restaurant business in Denver, Colorado, being then in partnership with one Frantz; that R. Wilner Wright, plaintiff's assignor, being desirous of becoming associated with the defendant as a partner in said business, Wright and the defendant agreed to become partners therein if the interest of the said Frantz, as such partner, could be purchased by Wright for the sum of $500.00; that on the date last mentioned the defendant and Wright went to a bank in Denver, where Wright obtained $500.00 in cash, which was immediately handed to the defendant "for the purpose of negotiating with Frantz" so that Frantz might be eliminated from the partnership and that Wright might be substituted in lieu thereof; that defendant gave to Wright his promissory note for $500.00, payable on demand, as security for the money which the defendant then took for the purpose of negotiating with Frantz; that the defendant took the $500.00, went to Frantz, bought him out, and pursuant to their agreement Wright and Krouskop "then and there became partners in said business and said $500.00 note became extinguished and paid in full." It was also averred that Wright and the defendant immediately after June 10, 1935, became partners in said business, and as such partners continued to operate and manage it as a partnership; that during the last part of September the partners decided to liquidate the business, which Wright himself then did on behalf of said partners; that all moneys received through said liquidation were retained by Wright and "no accounting" was made to "defendant for the sum so received and as his one-half share thereof"; that said note was assigned to plaintiff after maturity and without consideration, with full knowledge on her part of the foregoing facts, and plaintiff is not "a bona fide

holder of said note or a holder for value in due course." The prayer of the answer is for the dismissal of plaintiff's petition with costs to the defendant.

Plaintiff's reply put in issue the averments of defendant's answer.

The trial of the case, as already indicated, was to the court without a jury. Being of the opinion apparently that plaintiff was a holder in due course, the trial judge declined to receive any evidence offered by the defendant to establish the several defenses as pleaded by the latter, and accordingly, through numerous rulings, shut out sundry offers of proof tendered by the defendant for that purpose. These rulings were, of course, correct if it was true that the plaintiff as a matter of fact was a holder in due course of the aforesaid promissory note. But a different rule ordinarily prevails between the immediate parties to a note or other negotiable instrument or in case it is negotiated when overdue. See Sections 74-402, 74-403, 74-408, and 74-116, W. R. S., 1931; Brannan's Negotiable Instrument Law (6th Edition) 252-253.

It is suggested on behalf of the respondent that the contract in suit is governed by the law of Colorado and that appellant did not plead or prove that law. It does not seem to be pointed out what the consequences of such an omission would be. However, this court has adopted the rule that in the absence of proof to the contrary the law of a sister state will be presumed to be the same as our own. H. E. Wright & Co. v. Douglas, 26 Wyo. 305, 183 P. 786; Hawkins v. Stoffers, 40 Wyo. 226, 276 P. 452. And see 22 C. J. 154 and cases cited in note 6.

The chief controversy between the parties to the action appears to be, under both briefs and oral argument submitted here, concerning the point whether or not plaintiff was a holder in due course. It is our view that she was not and that this is so for several reasons:

1st. It is quite apparent that her husband, R. Wilner Wright, was the agent of Ruth Wright, his wife and the plaintiff herein, in handling the transaction which resulted in the taking of the note from the defendant Krouskop. In fact, as we have seen, she testified that she loaned "her husband money to get that note" and that the original $500.00 was her money. It is true that she subsequently qualified this statement by saying that at least $300.00 of this amount was hers and that part of the money was hers and part was her husband's. Assuming that the latter statement was true, then the note, like their joint account in the bank in Denver, was the property of both her and her husband. From her testimony, which we have heretofore outlined and need not again review, we think it obvious that she knew just how her money was to be employed. It would seem rather significant also that she stated on the witness stand her husband advised her that the money was to be used to put in the business of the filling station, but whether it was a partnership or not she "didn't know at that time." She did not deny that her husband and Krouskop were partners in the business, and her husband gave no testimony whatsoever in the district court. Under all the circumstances shown by this record we fail to see why it was necessary to transfer the note to her at all, except perhaps to enable her to sue thereon as the real party interested, as required by our code of procedure, Section 89-501, W. R. S. 1931. If her husband had brought the action and had recovered a judgment therein which had been fully collected, undoubtedly she could have demanded from him the return of her money which she says she "loaned" to him to get the note.

2ndly. Section 74-403, supra, provides:

"Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course."

234

Section 74-1704, W. R. S., 1931, reads:

"In determining what is 'reasonable time' or an 'unreasonable time' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instrument, and the facts of the particular case."

In this connection the utterances of two appellate courts may properly be considered. Where a demand note was issued June 12, 1911, and it was negotiated January 18, 1912, the Supreme Court of Iowa in In re Philpott's Estate, 169 Iowa 555, 151 N. W. 825, said:

"Under the authorities, a reasonable time for the negotiating of a demand note is rather brief. Its dishonor is not long delayed. In the following cases, respectively, 2 days, 7 days, and 30 days were held to be a reasonable time: Field v. Nickerson, 13 Mass. 131; Thruston v. McKenn, 6 Mass. 428; Ranger v. Corey, 1 Metc. (Mass.) 369. In the following cases, respectively, 2½ months, 3½ months, and 8 months have been held beyond a reasonable time, and sufficient to dishonor a demand note; Losee v. Durkin, 7 Johns. (N. Y.) 70, 5 Am. Dec. 245; Stevens v. Bruce, 21 Pick. 193; Ayer v. Hutchins, 4 Mass. 370, 3 Am. Dec. 232; Bank v. Jenness, 2 Metc. (Mass.) 288. There is, however, no definite rule to be applied, and, among other elements, 'the facts of the particular case' are to be considered."

And in McAdam v. Grand Forks Mercantile Co., 24 N. D. 645, 140 N. W. 725, the Supreme Court of North Dakota remarked:

"There is no question that the note under consideration was past due, both when purchased by Vallely and when purchased by the plaintiff. It was a demand note, dated January 16, 1904. It was purchased by the plaintiff on March 6, 1905. It is well established that a note payable on demand is due within a reasonable time after its date, and there are practically no authorities which hold that such reasonable time can be extended beyond a year."

The Supreme Court of Illinois denied leave to have certiorari or an appeal in National Republic Co. v. Wieboldt, 296 Ill. App. 643, 16 N. E. (2d) 184, where the first paragraph of the abstracted decision was as follows:

"The holder of demand note which was allegedly executed without consideration pursuant to an understanding that the signers would not be liable thereon, and on which neither interest nor principal was paid for over a year, after which it was indorsed without recourse to an affiliate of payee, and then to holder as another affiliate, both of which had substantially the same officers as payee, was not a 'holder in due course,' particularly since the note was payable on demand and was not negotiated within reasonable time."

See also 60 A. L. R. 649 note.

Certainly cases can be found where under their peculiar governing circumstances it was held that the fact that a demand note had been issued more than a year before transfer was no obstacle to the holder thereof enforcing it as a holder in due course. We are, however, inclined to the view that this case should not be regarded as one in that category.

3rdly. We have already referred to the fact that the record herein shows that R. Wilner Wright was plaintiff's agent in the transaction which resulted in the issuance of the note upon which the action in the district court was commenced. It would seem that his knowledge concerning that transaction was imputable to her. 13 R. C. L. 1176, Section 204, says that: "The general rule that notice to an agent while acting in his principal's business is notice to the principal, is applicable to notice to a husband while acting as agent of his wife."

In Hopkinson v. First National Bank of Provincetown, 293 Mass. 570, 200 N. E. 381, the court said:

"The defendant Atwood admitted of record in the

case that her late husband as her agent had charge of the transaction with the defendant bank by which she purchased the property. The plaintiff offered evidence to prove that, about two months before the conveyance to the defendant Atwood, her late husband was informed by the plaintiff that he had an agreement for the purchase of the woodlot in question and had paid the price for it in full. The judge excluded the evidence, subject to the plaintiff's exception.

"This evidence was admissible. It warranted the inference that when, shortly afterwards, the defendant Atwood's late husband bought the woodlot as agent for his wife, he still retained his knowledge of the plaintiff's equitable right. If he did, his knowledge being attributable to his principal even though she was also his wife (see Sampson v. Sampson, 223 Mass. 451, 458-460, 112 N. E. 84), the defendant Atwood was not a purchaser without notice, and is bound by the same equitable duty as was Linnell."

In Goodbar v. Daniel, 88 Ala. 583, 7 So. 254, it appeared that a husband purchased property for his wife and that the presumption in that State was that the money invested was from the wife's separate estate. Under the Alabama code of 1876, Sections 2706-2709, making the husband the trustee of the wife's statutory separate estate and charging him with the duty of reinvesting the proceeds of its sale, it was held he was the agent of the wife in making the investment, and that any knowledge he obtained as to the fraudulent intent of the vendor, acquired while engaged in the transaction of the business as the wife's agent, was imputed to the wife as her knowledge.

The Supreme Court of Michigan in Loveland v. Bump, 198 Mich. 564, 165 N. W. 855, used this language:

"Was the plaintiff a bona fide holder of these notes? The record discloses that it is her claim that these notes were part of the collateral security for a loan made by her to the Brenard Manufacturing Company, but it also shows, and her testimony establishes that

her husband, who was the managing partner of the company, was her agent in making this loan and taking this collateral. She also says that the money loaned came from her husband, who, she presumes, earned it in the Brenard Manufacturing Company; that it had never been in her possession; that it was deposited in the bank by her husband, and drawn out by her husband as he saw fit, he having full authority to sign checks and loan the money. The rule is too well established to need citation of authority that knowledge of the agent is knowledge of the principal. Plaintiff's husband, her agent, was the active partner of the business, and knew the consideration for this note and the terms of this contract. Obviously plaintiff is not a bona fide holder."

See also Loveland et al. v. Ingle, 230 S. W. 1054, (Tex. Civ. App.) ; McCullough v. Satterthwait, 11 Fed. 2d 111; 30 C. J. 625, Section 177.

It is urged finally for the respondent that the evidence sought to be introduced by the defendant in the district court and excluded by the rulings there made and assigned as error here, in any event constituted no defense to the action and would violate the rule that parol testimony is inadmissible to vary the terms of a written contract. But we cannot see our way clear to uphold this contention. Section 74-116 W. R. S., 1931, provides in part as follows:

"As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument."

This section of our statutes, like those hereinabove cited, is a part of the Uniform Negotiable Instruments Act (Sec. 16) adopted in our State some years ago and generally by other States of the Union.

The decisions presently to be mentioned have for the most part considered language similar to Section 74-116, supra, and are of material assistance we think in aiding us in disposing of the instant case.

First National Bank of Crary v. Miller, et al., 46 N. D. 551, 179 N. W. 997, was an action on a $800.00 promissory note, brought by the plaintiff bank against one Herbert Miller, the maker, and other parties as guarantors thereon. The action was between the original parties to the instrument and no question as to plaintiff being a holder in due course was involved. The defendant maker of the note and his guarantors had executed and delivered it to the plaintiff bank for the special purpose of procuring money with which to complete the amount of a cash bail for one Earl Miller, charged with a criminal offense. This money was to be deposited with the state's attorney and if the bail were exonerated, to be returned to the plaintiff and the note to the defendants. In due time the bail was by court order exonerated.

Under these facts it was held that the defendants were under no further liability upon the note and that the introduction of evidence to establish them was proper under the law of North Dakota, which is identical with our Section 74-116, supra, and did not tend to vary the terms of the written instrument, the note aforesaid. The trial court had excluded offers of proof of these facts and judgment had passed for the plaintiff. Reversal of the judgment and a new trial was ordered. The Chief Justice of the appellate court in his concurring opinion briefly and pertinently remarked:

"In my opinion the defendants might assert as a defense that the note in suit was delivered for a special purpose only, and that such purpose has been accomplished. The evidence offered by defendants tending

to establish this defense should have been admitted, and the resulting issue of fact, if any, submitted to the jury."

In Silva v. Gordo et al., 65 Cal. App. 486, 224 P. 757, it was held that parol evidence being admissible to show the consideration or want of consideration for a note sued on in an action brought between the original parties to the instrument, the court erred in striking out a special defense contained in defendants' amended answer that the note was given and received only as security for the faithful performance of an agreement which the defendants were ready, willing and able to carry out. It was so held irrespective of the Civil Code of California, Section 3097 (similar to our Section 74-116, supra) authorizing proof that delivery was conditional or for a special purpose only. In this case there had been a judgment entered for plaintiff upon the promissory note upon which the action was grounded. This judgment was reversed and the cause remanded, with directions to deny plaintiff's motion to strike out the special defense contained in the defendants' amended answer. The opinion in this case reviews at length a number of cases presenting facts analogous to those at bar, one of these being Treadwell v. Himmelmann, 50 Cal. 9, which was abstracted in this language:

"Where the defendant executed a promissory note in favor of the plaintiff with the understanding that he should procure certain parties to assign to himself liens on land claimed by the plaintiff, which liens the defendant should hold for the benefit of the plaintiff in satisfaction of the note, it was held that the securing of said liens by the defendant and the holding of himself ready to turn them over to the plaintiff amounted to an accord and satisfaction and that his so doing should be regarded as payment. The court excluded evidence of such parol agreement. This was held error."

The United States Circuit Court of Appeals for the

Ninth Circuit in Macomber v. Goldthwaite, 22 Fed. 2d 638, approved the legal principles announced in Silva v. Gordo, supra, in this language.

"One, sued by the payee on a promissory note which the defendant admits he made, can set up as a defense that the note was given as security for the performance by defendant of an oral contract entered into with plaintiff, and was to be returned to defendant upon compliance with the terms of the contract, and he may rely upon parol evidence to show that he is in fact a surety and that the note has been paid. Such testimony is not offered to repudiate the written instrument, nor to vary or alter its terms, nor to avoid payment thereof, but to show that in fact payment has been made and the contract fulfilled. The recent case of Silva v. Gordo, 65 Cal. App. 486, 224 P. 757, clearly states the law as it prevails in California, where the contract was made and was to be performed. Farmers' & Citizens' Bank v. Sherman, 33 N. Y. 69."

In Storey v. Storey, 214 Fed. 973, the United States Circuit Court of Appeals for the Seventh Circuit considered a case where the general code of Ohio, Section 8121, read as does Section 74-116 W. R. S., 1931, supra. It was held that this section of the law was but a codification by the Negotiable Instruments Act of the general law, and that accordingly, where a father sued his son on certain promissory notes, the son was entitled to prove by parol evidence that the notes were not delivered with intent to create a debt in favor of the father, but merely to evidence advancements made by the father to the son to enable him to secure a medical education.

See also Sayre v. Leonard, 57 Colo. 116, 140 P. 196; Robinson v. Linn., 155 Or. 591, 65 P. 2d 669; Galloway v. Thrash, 207 N. C. 165, 176 S. E. 303; Hammons, State Supt. of Banks, v. O'Brien, 32 Ariz. 436, 259 P. 881; Lopato v. Hayman, 43 R. I. 271, 111 A. 529; McGregor v. First Farmers'-Merchants' Bank & Trust Co., 180 Wash. 440, 40 P. 2d 144.

In the case at bar the promissory note upon which the action in the district court was based, so far as appears by the offers of proof rejected, was given for the special purpose of protecting plaintiff's husband, R. Wilner Wright, in the transaction described in defendant's answer. According to the defense tendered therein and which was not allowed in the district court, Wright turned over to Krouskop the $500.00 in cash to enable the latter to purchase for Wright the partnership interest in the Range View Filling Station business, then held by Frantz. If it should develop that such purchase was not possible then the money was to be returned to Wright and the note to Krouskop. If the partnership interest could be, and was, acquired for Wright, then the latter received what he deposited the money in Krouskop's hands for, and the note was to be returned to Krouskop or regarded by the parties as paid. Krouskop as a matter of fact—assuming of course that this defense as alleged in the answer were proven to the satisfaction of a court or jury—received nothing for making the note, and, under the authorities cited above, should succeed in his defense of the action.

Our conclusion is that the trial court erred, to defendant's prejudice, in not admitting and considering the tendered evidence. It may be perhaps that some of the offers of proof should have been somewhat more precise than they were, but in our judgment the defendant should have the benefit of the defense pleaded if he could establish it. We think that justice requires a retrial of the cause on that account.

The case of Weinstein v. Sprintz, 234 Ill. App. 492, drawn to our attention by respondent, we regard as inapplicable here for several reasons, viz.: The section of the Uniform Negotiable Instruments Act hereinbefore quoted (our Section 74-116, supra) does not appear to have been cited or considered by the court and the agreement for the purchase of the property

there involved was apparently not consummated as it was in the case at bar.

The judgment will be reversed and the cause remanded, as already intimated, with instructions that a new trial be granted.

*Reversed with instructions to grant a new trial.*

BLUME, J., concurs.

KIMBALL, J.

I concur, but shall add a word on the question whether the evidence offered in support of the third defense should have been excluded on the ground that it tended to vary the terms of the note contrary to the parol evidence rule. If it be conceded that section 16 of the Uniform Negotiable Instruments Act does not alter the rule of the common law (see Bushnell v. Elkins, 34 Wyo. 495, 245 P. 304, 51 A. L. R. 13) excluding parol evidence to vary a written agreement, it does not follow that the evdience was inadmissible. It seems that the substance of the pleaded defense was that the note was discharged when plaintiff's husband acquired an interest in the partnership business pursuant to an oral agreement to accept that interest in satisfaction of the debt evidenced by the note. It is permissible at common law to prove such an executed oral agreement though it was made contemporaneously with the giving of the note. This is shown by some of the cases cited above in the opinion by the Chief Justice. Many other similar cases are reviewed in Richards v. Hodges, 164 N. C. 183, 80 S. E. 439.